**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-20675

UNITED STATES OF AMERICA

Plaintiff/Appellee,

versus

HAROLD TORRES PEDROZA,

Defendant/Appellant.

Appeal from the United States District Court
for the Southern District of Texas

March 11, 1996

Before KING, STEWART, and PARKER Circuit Judges.

CARL E. STEWART, Circuit Judge:

Harold Torres Pedroza appeals the district court's judgment sentencing him to concurrent 145-month prison terms plus five years supervised release and fining him $10,000. Pedroza also challenges the court's ruling denying his motion to sever his trial from his codefendant, Henry Gonzalez Perez. We have thoroughly reviewed the record. Finding no error, we affirm the district court's decisions.

**FACTS**

Harold Torres Pedroza and Henry Gonzalez Perez were charged with conspiring to possess cocaine with intent to distribute and aiding and abetting each other with the drug possession. During a two-day trial, the government presented testimony regarding surveillances conducted on both Pedroza and Perez.

Officer Rick Ashwood testified about a surveillance he conducted on the apartment located in the 6100 block of Tiswell in North Houston on September 14, 1993. Perez was seen leaving the apartment in a maroon Grand Am. Perez was followed to two other apartments. Perez exited one of the apartments with an African-American male who carried a plastic bag. When Perez returned

to the Tiswell apartment, he carried several plastic bags from the trunk of the Grand Am into the apartment.

Officer Daniel Fern testified regarding a surveillance conducted on Perez on September 22, 1993. Perez left the Tiswell apartment and went to a Target Store to use a pay phone. He then drove to a house on Log Cradle Street. Fern had to abandon the surveillance to avoid exposure, and Officer Hammons continued the surveillance.

Hammons testified that he observed Perez and an Hispanic male exit the Log Cradle Street house. They drove around the block to check for any possible surveillances and immediately returned to the house. Both men went into the house. When they returned to the car, the Hispanic male was carrying a suitcase which he put in the trunk of Perez's car. Hammons testified that both men were nervously looking up and down the deserted street as they approached the car. The Hispanic male went back inside the house, and Perez drove away. Hammons initially followed Perez but was ordered to return to the Log Cradle Street address in order to continue surveying the Hispanic male who had placed the suitcase in the trunk. Hammons saw two people leave the house; however, he did not follow their car because neither of them was the Hispanic male who had placed the suitcase in Perez's trunk. Minutes later, the Hispanic male left the house in a white Mitsubishi. Hammons received a report that Perez had been stopped and that 10 kilograms of cocaine was found in the suitcase. The Hispanic male, Pedroza, was stopped. Pedroza had on the clothes that Hammons had described on the Hispanic male who brought the suitcase to Perez's trunk.

The government also adduced testimony from Officer Ted Bell, who appeared at the Perez and Pedroza arrest scenes. Bell testified that Perez consented to a search of the Grand Am and his apartment. A woman was found in the apartment; however, Perez said that she was not involved. Bell also testified that Perez said that "El Gordo" put the suitcase in his trunk. Bell further testified that he went to the spot where police stopped Pedroza, and that Pedroza denied putting a suitcase in Perez's trunk.

2

None of the government's evidence demonstrated that Pedroza was "El Gordo." Neither defendant presented evidence after the government rested.

Based on the above evidence, the jury convicted both men. Pedroza received concurrent 145-month prison terms and five years supervised release. He was also fined $10,000. Pedroza appeals his convictions and the trial court's denial of his motion to sever his trial from Perez's trial.

## DISCUSSION

### A.    *SUFFICIENCY OF THE EVIDENCE.*

Pedroza argues that the evidence was insufficient for a reasonable juror to conclude that Pedroza *knew* of the conspiracy or that he *intended* to join it. Pedroza contends that the evidence was insufficient to establish that he *knew* of Perez's intention to possess cocaine or that he *intended* to aid and abet Perez to possess it. Pedroza was seen for the first time after the government had surveyed Perez for several days. Pedroza asserts that the government's evidence of his involvement is limited to the following: he got in Perez's car, drove around the block with Perez, went back into the house, and returned to the trunk of the car where Pedroza supposedly placed a suitcase. Moreover, Pedroza argues that "[s]imply placing the suitcase in Perez's car fails to establish that Pedroza knew what was in the suitcase." Pedroza maintains that these actions may raise a suspicion of guilt, they do not prove it beyond a reasonable doubt.

The government counters that it presented sufficient evidence. It claims that Pedroza's intent to distribute contraband can be inferred from the possession of a large amount (10 kilograms) of contraband. The government argues that because it used the "aiding and abetting" theory, the government did not have to prove actual possession; it needed only to prove Pedroza's association with, participation in, or actions to further the possession and distribution of drugs. Further, the circumstances surrounding the transaction support a finding that Perez and Pedroza had agreed to possess cocaine and intended to distribute it. Moreover, the circumstances allowed the jury to infer that Pedroza knowingly participated.

3

We must determine whether the government produced sufficient evidence under the standard of review which is well established in this circuit. The standard for reviewing the sufficiency of the government's evidence is whether a "reasonable trier of fact could have found that the evidence established the appellant's guilt beyond a reasonable doubt." United States v. Ruggiero, 56 F.3d 647, 654 (5th Cir.), cert. denied, 116 S.Ct. 486 (1995); and United States v. Jaramillo, 42 F.3d 920, 922-23 (5th Cir.), cert. denied, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995). We must review the evidence in the light favorable to the guilty verdict, that is, in the light most favorable to the government. See United States v. Tannehill, 49 F.3d 1049, 1054 (5th Cir.), cert. denied, 116 S.Ct. 167 (1995). Further, we must consider all reasonable inferences arising from the evidence in the light most favorable to the government. Id.

### 1.     Sufficiency Of The Evidence Presented On The Conspiracy Count.

We must determine whether the government presented enough evidence that a reasonable trier of fact would believe that the government proved, beyond a reasonable doubt, all the elements of a conspiracy charge. To sustain a conviction of drug conspiracy the government had to produce evidence satisfying the following three elements: (1) the existence of an agreement to possess contraband with intent to distribute, (2) knowledge of the agreement, and (3) voluntary participation in the agreement. United States v. Polk, 56 F.3d 613, 619 (5th Cir. 1995); United States v. Scott, 48 F.3d 1389, 1392 (5th Cir. 1995); and United States v. Quiroz-Hernandez, 48 F.3d 858, 865 (5th Cir. 1995). The evidence did not have "to exclude every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except guilt." Ruggiero, 56 F.3d at 654. Further, the jury was free to infer a conspiracy from circumstantial evidence, such as the Pedroza's presence or association. See United States v. Fierro, 38 F.3d 761, 768 (5th Cir. 1994), cert. denied, 115 S.Ct. 1431, 131 L.Ed.2d 312 (1995).

We find that the government produced enough evidence to satisfy the elements of a drug conspiracy. Pedroza attempts to portray himself as someone merely present at the scene. He cites

4

cases[1] in which this court has reversed convictions because the government proved only that the defendants were present, but did not prove the defendants' guilt beyond a reasonable doubt. Here, however, we conclude that Pedroza's participation exceeds the "merely present" threshold. Perez called Pedroza's house from a pay phone and had a lengthy conversation. When Perez arrived at Pedroza's house, Perez did not call for Pedroza; instead, Perez met him at the curb. The two men drove around the block, which is a recognized practice among drug traffickers to detect surveillances. Both men returned to the Log Cradle Street house and went inside. When Perez and Pedroza emerged from the house, Pedroza carried a suitcase. The two men looked up and down the deserted street nervously until they reached the car, and Pedroza put the suitcase in the trunk. If Pedroza was unaware of the transaction taking place, there would be no explanation for his participating in the bizarre activity of driving around the block in his own neighborhood, and he would have no reason to look nervously up and down the street. Pedroza's nervousness is indicative of his guilty knowledge. See United States v. Garza, 990 F.2d 171, 174 (5th Cir. 1993). We hold that enough evidence appears in the record for a reasonable juror to find, beyond a reasonable doubt, that Pedroza knew of a drug conspiracy agreement and voluntarily agreed to participate in it.

### 2. Sufficiency Of The Evidence Presented On The Aiding And Abetting Count.

Although we find that the government presented sufficient evidence on the conspiracy count, we must also evaluate whether the government introduced enough evidence to convict Pedroza on the aiding and abetting count. To sustain a conviction of aiding and abetting a drug possession with intent to distribute the government had to produce evidence satisfying the elements for drug possession and for aiding and abetting. The elements for possession of drugs with intent to distribute

---

[1]Pedroza cites United States v. Gardea Carrasco, 830 F.2d 41 (5th Cir. 1987) (insufficient evidence was found although the defendant drove in the car with a codefendant to make arrangements regarding the transport of marijuana and also helped carry suitcases containing marijuana into the plane) and United States v. Sacerio, 952 F.2d 860 (5th Cir. 1992) (the convictions of both defendants were reversed although Rubio drove a car containing cocaine, Rubio called Sacerio for assistance and Sacerio flew to New Orleans, Sacerio rented a hotel room from which calls were made to two codefendants and in which a bag of cocaine was found).

are as follows: (1) knowledge of the contraband, (2) possession of the contraband, and (3) intent to distribute the contraband. See Polk, 56 F.3d at 619-20; and Quiroz-Hernandez, 48 F.3d at 865.

The aiding and abetting aspect of Pedroza's charge required the following proof: (1) Pedroza's association in the criminal activity, (2) his participation, and (3) his action to help the activity succeed. See United States v. Salazar, 66 F.3d 723, 729 (5th Cir. 1995); Polk, 56 F.3d at 620; and Fierro, 38 F.3d at 768. "Association means that the defendant shared in the criminal intent of the principal. . . . Participation means that the defendant engaged in some affirmative conduct designed to aid the venture. . . . Although relevant, mere presence and association are insufficient to sustain a conviction of aiding and abetting." Salazar, 66 F.3d at 729 (citations omitted).

We find that the government produced enough evidence to establish Pedroza's guilt regarding the drug possession with intent to distribute and the aiding and abetting. Hammons provided uncontroverted testimony that Pedroza was the man who emerged from the Log Cradle Street house carrying the suitcase and who placed the suitcase in Perez's trunk. Pedroza therefore exercised possession and control over the suitcase, which contained $18,000 and $20,000 worth of cocaine. We hold that this was sufficient for the jury to find that Pedroza actually possessed the cocaine and to infer Pedroza's intent to distribute the cocaine.

Likewise, we conclude that the evidence allowed the jury to find that Pedroza agreed to participate in the drug transaction. He met Perez at the car, drove around the block, and carried the suitcase to the car while nervously checking for surveillances. In the aggregate, these actions show that Pedroza agreed to possess the drugs and agreed the help distribute the drugs.

Finally, the evidence established that Pedroza knowingly participated. Pedroza gave several erroneous answers when questioned by police and engaged in actions inconsistent with those of an innocent person. First, he claimed he was a citizen of Puerto Rico when he really was a citizen of Colombia. Second, Pedroza denied residing at the Log Cradle Street address although he possessed the keys to the house. Finally, Pedroza nervously looked up and down the street when carrying the suitcase to the car. This evidence allowed a jury to conclude that Pedroza knew what was going on

6

and knowingly participated. Thus, Pedroza's arguments that the government did not prove that he *knew* the contents of the suitcase are meritless when looking at all the circumstances surrounding the transaction. We hold therefore that the government presented sufficient evidence on the aiding and abetting count.

**B.      *DENIAL OF THE MOTION TO SEVER.***

Pedroza argues that the denial of his motion to sever prevented him from eliciting testimony regarding statements Perez made to the government that Pedroza did not look like the man with whom he met at the Log Cradle Street address. The government's letter explains Perez's statements as follows:

> Pursuant to the government's obligation under Brady, this letter will advise that Henry Gonzalez-Perez debriefed, pursuant to a proffer letter, last December at our offices. At that time, he said: 1) the person he drove around the block on 9/22/93 looked different from your client; and, 2) after showing Gonzalez-Perez your client's photo, he said that the person we arrested was definitely not the same person he picked up at the Log Cradle residence.

Pedroza apparently contends that the letter suggests that he was not the Hispanic male participating in the drug transaction. Pedroza claims he was prevented from admitting Perez's statements because rule 410 of the Federal Code of Criminal Procedure disallows a defendant's plea negotiation statements. Also, he was precluded from cross-examining government witnesses regarding Perez's statements. He maintains that the statements are not hearsay because he would not have used them for the truth of the statements, but rather to show that Hammons' identification of Pedroza was wrong.

The government counters that the record is void of any indication that Perez would have testified on Pedroza's behalf if the trials were separated or that Pedroza made any efforts to secure Perez's testimony. Further, the government argues that Perez's statements elicited from government witnesses are inadmissible hearsay because the truth of the statements would be needed to disprove Hammons' identification.

The standard guiding review of a denial of a motion to sever is abuse of discretion. United States v. Neal, 27 F.3d 1035, 1045 (5th Cir. 1994). The district court abuses its discretion by failing

7

to sever a trial properly joined under Federal Rule of Criminal Procedure 8(a) only if a specific trial right of a defendant will be compromised or if the joinder will prevent the jury from making a reliable decision regarding a defendant's guilt. Id. In determining whether the district court abused its discretion, we must evaluate whether Pedroza satisfied his burden regarding the severance. Pedroza had to satisfy the following elements to justify a severance based on the need to produce exculpatory evidence from a co-defendant: (1) a need for the testimony, (2) the substance of the codefendant's testimony, and (3) the exculpatory nature and effect of the testimony, and (4) the codefendant's willingness to testify at trial. United States v. Ramirez, 954 F.2d 1035, 1037 (5th Cir.), cert. denied, 505 U.S. 1211, 112 S.Ct. 3010, 120 L.Ed.2d 886 (1992).

We find that Pedroza failed to satisfy his burden for establishing the need for severance. Pedroza failed to clearly establish Perez's willingness to testify on his behalf. Pedroza responds only that he did not necessarily need Perez to testify if he could have cross-examined the government witnesses regarding Perez's statement. Unfortunately for Pedroza, this testimony would have been inadmissible hearsay because he could not discredit Hammons' identification without relying on the truth of Perez's statements. Thus, Pedroza could not use the exculpatory evidence unless Perez personally testified regarding his statements. Pedroza has presented no concrete evidence that Perez would, in fact, have testified on his behalf if the trial judge had severed the trials. We hold that the trial court did not abuse its discretion by denying Pedroza's motion to sever.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment sentencing the defendant to 145-month prison terms plus five years supervised release and fining him $10,000. Similarly, we AFFIRM the denial of the defendant's motion to sever his trial from his codefendant's trial.