Revised March 24, 1999

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————————

No. 97-41162

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SALVADOR VARGAS NAVARRO;
SAMUEL PASQUAL EDMONDSON,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Eastern District of Texas

———————————————

March 8, 1999

Before POLITZ, EMILIO M. GARZA, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:[*]

Samuel Pasqual Edmondson and Salvador Vargas
Navarro appeal their convictions for conspiracy to
possess methamphetamine with intent to distribute, in
violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and for
possession thereof with intent to distribute, in violation of 21

———————————————

[*] Judge Politz announced the judgment of the court and
delivered the opinion as to Parts I through V. Judge Emilio M.
Garza delivered an opinion as to Part VI, joined by Judge
Stewart, to which Judge Politz dissents.

U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  For the reasons assigned, we affirm all convictions and the sentences of Navarro, but vacate and remand for the resentencing of Edmondson.

## BACKGROUND

At about 2:00 a.m. on a morning in September 1996, a Sherman, Texas police officer stopped a car for failing to maintain a single lane.  Edmondson was driving the car, and Navarro and Guadalupe Plascencia Lopez were passengers.  The officer asked Edmondson for his license and proof of insurance.  Edmondson, obviously nervous, provided title and proof of insurance, but stated that he did not have a driver's license, giving the officer his Arkansas photo identification instead.  Edmondson was instructed to step to the rear of the car and the officer wrote warning citations for his failure to maintain a single lane and for driving without a license.

While writing the warnings, the officer questioned Edmondson about his occupation, the purpose of the trip, and the owner of the vehicle.  Conflicting responses aroused the officer's suspicions and he asked Edmondson whether there were drugs in the car.  Edmondson stated that there were none and that the officer could look if he wanted.  The officer then returned to the car and questioned Navarro and Lopez whose responses conflicted with those of Edmondson.  In addition, Navarro repeatedly asserted that he did not speak English although he conversed at length in

2

English with the officer.

The officer then returned to Edmondson, gave him the citations and his documents, asked again whether there were drugs in the car, then asked Edmondson if he would sign a consent to search form. Edmondson first demurred, then appeared to read the form thoroughly, and signed same.

A search of the car revealed methamphetamine in a brown duffle bag on the back seat of the vehicle on which Navarro had been leaning. Edmondson, Navarro, and Lopez were arrested and subsequently released on bond. All three were indicted. Edmondson was returned to jail. Navarro was arrested in Arkansas four months later as the result of a vehicle stop for speeding. Julie Ferguson, Navarro's girlfriend, was driving and Navarro was a passenger. After discovering the outstanding warrant for Navarro's arrest, Navarro and Ferguson were removed from the vehicle and handcuffed. At this time, Ferguson informed the officer about drugs at her house that belonged to Navarro. Ferguson escorted the Arkansas police to her home, which she shared with Navarro, and gave written and verbal consent for a search of the premises which revealed guns, but no drugs. Ferguson directed the officers, however, to a henhouse in the backyard where she advised that Navarro had buried drugs. The officers checked and discovered cocaine and methamphetamine.

Both Navarro and Edmondson unsuccessfully moved to suppress evidence of the drugs obtained during the search of the vehicle.

3

At trial, Ferguson testified about Navarro's drug activities and the government presented the evidence found in Arkansas. The jury found Navarro and Edmondson guilty of both counts.

Defendants were sentenced by video conferencing. The district judge, Chief Judge Richard Schell, was in Beaumont, Texas; the prosecutor and the defendants and their attorneys were in court in Sherman, Texas, approximately 300 miles distant. Navarro consented to the sentencing by video conference; Edmondson objected to same. The judge orally overruled Edmondson's objection, later assigning written reasons.[1]

In the sentencing guidelines computation Navarro received an increase of two levels for possession of firearms during the offense and four levels for his leadership role in the drug scheme. Edmondson was sentenced to life in prison and Navarro was sentenced to 360 months. Both timely appealed.

**ANALYSIS**

Navarro and Edmondson challenge their convictions on several grounds. Both contend that the district court erred in denying their motions to suppress evidence obtained as a result of the search of the vehicle and bag and that the district court erred in admitting evidence of the drug trafficking discovered in Arkansas. Navarro maintains that the evidence was insufficient

---

[1] **United States v. Edmondson**, 10 F. Supp. 2d 651 (E.D. Tex. 1998).

to support his convictions.  Edmondson contends that the district court improperly determined that certain evidence submitted *in camera* was not

discoverable under **Brady v. Maryland**.[2]  He also challenges his

sentencing by video conferencing as violative of Rules 32 and 43

of the Federal Rules of Criminal Procedure.  Finally, Navarro

contends that the district court erred in increasing his base

offense level for possession of a firearm and for his leadership

role in the offense.[3]

I

In reviewing the denial of a motion to suppress, we employ a

two-tiered standard, examining the factual findings of the

district court for clear error, and its ultimate conclusion as to

the constitutionality of the law enforcement actions *de novo*.[4]

Navarro maintains that the district court erred in denying

his motion to suppress, claiming that Edmondson had neither

actual nor apparent authority to consent to the search of his

---

[2]  373 U.S. 83 (1963).

[3]  In letters pursuant to 5th Cir. R. 28.4, Edmondson and
Navarro have raised the issue of **United States v. Singleton**, 144
F.3d 1343 (10th Cir. July 1, 1998), *op. vacated, rehearing en
banc pending*, **id.** (10th Cir. July 10, 1998).  In **Singleton**, a
panel of the Tenth Circuit found that a plea agreement offering a
witness leniency in exchange for testimony violated 18 U.S.C. §
201(c)(2), the federal bribery statute.  Defendants contend that
the pretrial diversion agreement the United States entered into
with Julie Ferguson might also violate § 201(c)(2).  Because we
have recently rejected **Singleton**'s rationale, we find this claim
to be without merit.  **United States v. Haese**, No. 97-10307, 1998
WL 842185, at * 8 (5th Cir. Dec. 7, 1998); **United States v.
Webster**, No. 96-11224, 1998 WL 834528, at * 42 (5th Cir. Dec. 3,
1998).

[4]  **United States v. Chavez-Villarreal**, 3 F.3d 124 (5th Cir.
1993).

6

bag.  Specifically, Navarro insists that Edmondson's consent to the search of the vehicle did not extend to his bag.[5]

Edmondson also challenges the denial of the motion to suppress, contending that his continued detention at the vehicle after the officer told him he was free to leave was illegal. Thus, Edmondson maintains that, under **Florida v. Royer**,[6] his subsequent consent to search was tainted by the illegal detention and was invalid.[7]

A consensual search is a well-settled exception to the search warrant requirement.[8]  In determining whether a search based upon consent is valid, the government must prove that the search was voluntary and that the defendant consented to the search or consent was obtained from a third party with the ability to give valid consent.[9]

In determining whether a consent to search is voluntary, we

---

[5]  Navarro cites to **United States v. Jaras**, 86 F.3d 383 (5th Cir. 1996) for this proposition.  In **Jaras**, this court held that a defendant's consent to search the car did not include consent to search a passenger's suitcase found in the trunk.  In that case, the defendant told the police that the suitcase belonged to the passenger.  **Id.** at 389.

[6]  460 U.S. 491 (1983) (plurality opinion).

[7]  Edmondson does not allege that the initial traffic stop was invalid.

[8]  **United States v. Tompkins**, 130 F.3d 117 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1335 (1998).

[9]  **United States v. Jenkins**, 46 F.3d 447 (5th Cir. 1995).

7

review several factors, no one of which is dispositive. These factors include:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.[10]

The district court found that the consent to search was voluntary. Our review of the record persuades that there is no error in this finding.

We then inquire whether, in light of the fact that Edmondson voluntarily consented to the search of the vehicle, his consent cured any earlier ostensibly illegal detention. Under our precedent, a voluntary consent to search cures any error that may have occurred with respect to detention.[11] Thus, assuming for this purpose that Edmondson's continued detention at his car was in fact illegal, under **Kelley** and **Shabazz**, this illegality would not taint an otherwise voluntary consensual search.

We also conclude that, as the district court found, Edmondson had the ability to consent to the search of the vehicle. Further, we conclude that, according to the consent

---

[10] **Tompkins**, 130 F.3d at 121 (quoting **United States v. Olivier-Becerril**, 861 F.2d 424, 426 (5th Cir. 1988) (citations omitted)).

[11] **United States v. Kelley**, 981 F.2d 1464 (5th Cir. 1993); **United States v. Shabazz**, 993 F.2d 431 (5th Cir. 1993).

form, he gave a general consent to search the entire vehicle, including the luggage contained therein.  There is no indication in the instant case, as there was in **Jaras**, that Edmondson advised that the luggage in the vehicle was not his.  Also, unlike **Jaras**, the bag containing drugs was not located in the trunk, but was in plain view on the back seat of the car.  Further, neither Edmondson nor Navarro objected to the officer's search of the bag.  Thus, we must conclude and hold that Edmondson's consent included the consent to search the bag found to contain drugs and that the holding in **Jaras** does not prohibit the officer's search of that bag.  We perceive no error in the district court's denial of the motion to suppress.

## II

Navarro and Edmondson also contend that the district court erred in admitting evidence of drug trafficking discovered in Arkansas in January 1997.  Navarro insists that this evidence was irrelevant and prejudicial because it was outside the scope of the conspiracy alleged in the indictment and thus misled the jury.  The indictment alleged that the conspiracy concluded on or about September 24, 1996.  Navarro contends that if the government wanted to use the January 1997 Arkansas evidence, it should have obtained a superseding indictment.

Edmondson also contends that the Arkansas evidence was irrelevant because it was outside the scope of the conspiracy.

9

Further, Edmondson maintains that the evidence was admitted improperly under Federal Rule of Evidence 404(b). In this regard, he asserts that the district court erred by not making findings under **United States v. Beechum**,[12] and by not giving a limiting instruction. Edmondson contends that these errors require either reversal or remand.

Evidentiary rulings, including those involving 404(b) evidence, are reviewed under an abuse of discretion standard.[13] When no objection is made at the time of trial, we may examine only for plain error.[14]

We first consider whether the Arkansas evidence was irrelevant and unduly prejudicial by being outside the scope of the conspiracy. Navarro cites our recent decision in **United States v. Brito**[15] for the proposition that the Arkansas evidence should have been excluded as being outside the scope of the conspiracy. In **Brito**, we held that evidence of a small-user quantity of marihuana found after the indictment alleged the conspiracy had ended was "irrelevant, extraneous offense

---

[12]   582 F.2d 898 (5th Cir. 1978).

[13]   **United States v. Walker**, 148 F.3d 518 (5th Cir. 1998).

[14]   Fed. R. Crim. P. 52(b).

[15]   136 F.3d 397 (5th Cir.), *cert. denied*, 118 S. Ct. 2389 (1998).

evidence" and that its admission was error.[16]  We also concluded, however, that its admission was harmless because the government did not refer to the evidence in its closing argument and because the jury was instructed that the defendants were not on trial for acts not alleged in the indictment.[17]

In the instant case, we conclude that the Arkansas drug evidence was not "irrelevant, extraneous offense evidence," even though it was discovered after the conspiracy allegedly ended. In **Brito**, we determined the evidence was irrelevant not only because of the time frame involved, but also because of the small quantity of marihuana that was introduced, compared to the charges of large-scale distribution for which the defendants were on trial.

By contrast, the Arkansas evidence presented in the instant case demonstrated the structure of the drug organization, as well as the continuing contact between Edmondson and Navarro.  For example, the testimony by Ferguson  concerning the Arkansas activities reflected that the drugs seized in the initial traffic stop were a cost of business and that, after the arrest, the group found a new route for drug deliveries and continued distributing drugs from the trailer in Arkansas.  Thus, although we remain aware of the danger of irrelevancy when introducing

---

[16]  **Id.** at 413.

[17]  **Id.**

11

evidence obtained after the scope of the conspiracy has allegedly ended, the evidence in this case was indeed highly probative. We accordingly find no error in the district court's admission of the evidence.

We must next decide whether the evidence of drug trafficking obtained in Arkansas falls under the rubric of Rule 404(b) and, if so, whether the district court committed error in failing to make **Beechum** findings or to give a limiting instruction.[18] Navarro and Edmondson did not request a limiting instruction and, therefore, this assignment of error may be reviewed only for plain error.[19]

At the threshold the district court must determine whether the proposed evidence is extrinsic, making applicable Rule 404(b). If this is found, the court must then decide whether the extrinsic evidence is relevant to a trait other than the defendant's character, and whether the evidence has probative value that is not substantially outweighed by its undue

---

[18] Rule 404(b) of the Federal Rules of Evidence provides in pertinent part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

[19] *See* Fed. R. Crim. P. 52(b).

12

prejudice.[20]  A failure to make these required **"Beechum** findings"
on the record requires remand unless the probative value and
prejudice of the evidence are readily apparent from the record
and there is a substantial certainty that the ruling was
correct.[21]

We find that **Beechum** and Rule 404(b) are inapplicable to the
Arkansas evidence because this evidence was intrinsic, rather
than extrinsic, in nature.  "Evidence that is 'inextricably
intertwined' with the evidence used to prove the crime charged is
not 'extrinsic' evidence under Rule 404(b).  Such evidence is
considered 'intrinsic' and is admissible 'so that the jury may
evaluate all the circumstances under which the defendant
acted.'"[22]  As noted, the evidence of drug operations and
organization in Arkansas demonstrated the continuing nature of
the organization, the structure of the organization, and the
continuing contact between Edmondson, Navarro, and Ferguson.
Such evidence was "inextricably intertwined" with the evidence
used to prove the charges of possession and conspiracy of
methamphetamine.  Accordingly, because  **Beechum** findings or other

---

[20]  **Beechum**, 582 F.2d at 911.

[21]  **United States v. Robinson**, 700 F.2d 205 (5th Cir. 1983);
*see also* **United States v. Zabaneh**, 837 F.2d 1249 (5th Cir. 1988).

[22]  **United States v. Royal**, 972 F.2d 643, 647 (5th Cir.
1992) (citations omitted) (quoting **United States v. Randall**, 887
F.2d 1262, 1268 (5th Cir. 1989)).

determinations of 404(b) admissibility were not required for this intrinsic evidence,[23] there was no error in the district court's failure to make same.  We further find no plain error in the lack of a limiting instruction for this evidence.

                              III

Navarro next contends that the evidence was insufficient to support his conviction for drug conspiracy and possession of methamphetamine with intent to distribute.  We review a claim of insufficiency of the evidence narrowly and affirm if a rational trier of fact could have found that the evidence established the essential elements of guilt beyond a reasonable doubt.[24]  The evidence is viewed in the light most favorable to the jury's verdict, with all reasonable inferences rendered in favor of that verdict.[25]

Navarro first contends that there was insufficient evidence of possession of a controlled substance with intent to distribute because there was no testimony that the bag containing narcotics actually belonged to him.  He submits that the government did not link the bag containing methamphetamine to him because there were two other people in the car.  In addition, he asserts that there was insufficient evidence to convict on the conspiracy count

---

[23]  **United States v. Coleman**, 78 F.3d 154 (5th Cir. 1996).

[24]  **United States v. Mmahat**, 106 F.3d 89 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 200 (1998).

[25]  **Id.**

because there was no evidence that he entered into an agreement with anyone to possess methamphetamine.

The government counters that there was sufficient evidence of possession because Navarro, the only passenger in the backseat of the vehicle, was leaning against the bag containing the drugs. The government also points out that Navarro was charged with aiding and abetting possession with intent to distribute, which requires proof of association, participation, and action to help the activity succeed.[26] The testimony of Julie Ferguson and other documentary evidence, the government suggests, establishes possession or aiding and abetting possession on behalf of Navarro. As to the conspiracy conviction, the government contends that there was sufficient evidence to infer an agreement to violate the narcotics law, which is all that is required to sustain a conviction for this crime.

We conclude that, viewing the evidence in a light most favorable to the jury's verdict, there was sufficient evidence that Navarro either owned the bag containing the narcotics or aided and abetted possession with intent to distribute the drugs. Further, we conclude that there was sufficient circumstantial evidence with which a rational trier of fact could have found Navarro guilty of the drug conspiracy. We must therefore deny Navarro's claim for relief on this basis.

---

[26] **United States v. Pedroza**, 78 F.3d 179 (5th Cir. 1996).

15

IV

Edmondson next contends that certain discovery materials submitted to the district court under seal might be disclosable under **Brady v. Maryland** or **Giglio v. United States**.[27] Under **Brady**, the prosecution must disclose evidence favorable to the accused upon request where the evidence is material to guilt or punishment.[28] Further, under **Giglio**, when the reliability of a witness is determinative of guilt or innocence, evidence affecting credibility of that witness falls within **Brady**'s rule.[29] A review of the evidence submitted under seal and the district court's order denying discovery of this evidence persuades that there was no error in the district court's decisions thereon.

V

Navarro appeals the district court's imposition of the 360 month sentence, claiming that the two-level enhancement for possession of a weapon pursuant to USSG § 2D1.1(b)(1) was erroneous because there was no nexus between the offense of conviction and the gun. Navarro also contends that the four-level upward adjustment for his leadership role under USSG § 3B1.1(a) was unlawful because the record fails to establish that

---

[27] 405 U.S. 150 (1972)

[28] **Brady**, 373 U.S. at 87.

[29] **Giglio**, 405 U.S. at 154-55.

level of his involvement in the drug activities.  We review the district court's enhancement for possession of a firearm and for a leadership role for clear error as they are factual determinations.[30]

Section 2D1.1(b)(1) of the Sentencing Guidelines provides a two-level enhancement for possession of a firearm "unless it is clearly improbable that the weapon was connected with the offense."[31]  The district court found that the firearms were connected with the drug offense because they were located in the house on the Arkansas premises from which Navarro conducted drug activity, the same premises on which the drugs were buried.  This finding was not in clear error.

Section 3B1.1(a) of the Sentencing Guidelines provides that a four-level adjustment can occur if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  In making this determination, the application note to this section directs the court to consider the following factors: "the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the

---

[30]  **United States v. Buchanan**, 70 F.3d 818 (5th Cir. 1995), *cert. denied*, 517 U.S. 1114 (1996); **United States v. Menesses**, 962 F.2d 420 (5th Cir. 1992).

[31]  **United States v. Villarreal**, 920 F.2d 1218, 1221 (5th Cir. 1991).

17

claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."[32]

Navarro insists that the sentence enhancement was in error because he exercised no control over his codefendants and because there were no coordinated drug activities between the defendants. The district court found that Julie Ferguson's testimony at trial, detailing Navarro's organization of various drug activities, was sufficient to warrant the enhancement for a leadership role. We find no error in this finding.

Therefore, for the foregoing reasons, the convictions of Navarro and Edmondson and the sentences of Navarro are AFFIRMED.

VI

We concur in every aspect of Judge Politz's opinion except with respect to his view on Rule 43 expressed in his dissent and, accordingly, we write separately to explain why Rule 43, as written, requires the defendant's physical presence in court during sentencing. Although we are sympathetic to the concerns expressed by Judge Politz, this issue should be left to the drafters of the Rules — Congress and the Supreme Court — to amend the Rules to address those concerns.

At sentencing, Edmondson refused to sign a Waiver of Rights

_____

[32] USSG § 3B1.1, comment. (n.4).

18

and Consent to Proceed by Video-Conference, and he objected that he wanted to be sentenced in person.  The district court overruled the objection, conducted the sentencing by video conferencing, and sentenced Edmondson to life incarceration on each of the two counts.  Edmondson argues on appeal that the court erred because video sentencing contravenes the plain language and purposes of Rules 32 and 43.  The Government argues that video conferencing satisfies the language of Rules 32 and 43.  The Government also argues that video conferencing is widely used, that it is beneficial because it increases productivity by reducing travel time, and that it is less costly and more safe than transporting prisoners.

We review a district court's interpretation of the Rules *de novo*.  *See United States v. Dean,* 100 F.3d 19, 20 (5th Cir. 1996).  Rule 43 provides for the "Presence of a Defendant":

> (a)  Presence Required.  The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
> (b) Continued Presence Not Required.  The further progress of the trial to and including the return of the verdict, and the imposition of sentence, will not be prevented and the defendant will be considered to

have waived the right to be present whenever a defendant, initially present at trial, or having pleaded guilty or nolo contendere,

(1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial),

(2) in a noncapital case, is voluntarily absent at the imposition of sentence, or

(3) after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

(c) Presence Not Required.  A defendant need not be present:

(1) when represented by counsel and the defendant is an organization, as defined in 18 U.S.C. § 18;

(2) when the offense is punishable by fine or by imprisonment for not more than one year or both, and the court, with the written consent of the defendant, permits arraignment, plea, trial, and imposition of sentence in the defendant's absence;

(3) when the proceeding involves only a conference or hearing upon a question of law; or

> (4) when the proceeding involves a correction of
> sentence under Rule 35.

FED. R. CRIM. P. 43.  The first step in interpreting the Rule is to consider the plain, ordinary meaning of the language of the Rule.  *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989).  The definition of "presence" in Black's Law Dictionary is:

> Act, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of.  The existence of a person in a particular place at a given time particularly with reference to some act done there and then.

BLACK'S LAW DICTIONARY 1065 (5th ed. 1979) (emphasis added).  The whole dictionary definition suggests that the common-sense meaning of "presence" is physical existence in the same place as whatever act is done there.  The Webster's definition suggests a similar meaning.  The Webster's Third New International Dictionary defines "presence" as:

> The fact or condition of being present: the state of being in one place and not elsewhere: the condition of being within sight or call, at hand, or in a place being thought of: the fact of being in company, attendance or association: the state of being in front of or in the same place as someone or something.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1793 (1981).  This dictionary defines "present" as:

> [B]eing in one place and not elsewhere: being within reach, sight, or call or within contemplated limits: being in view or at hand: being before, beside, with, or in the same

21

place as someone or something.

*Id.* Although the dissent emphasizes the phrase "within sight or call," the common-sense understanding of the definition is that a person must be in the same place as others in order to be present. The plain import of the definitions is that a person must be in existence at a certain place in order to be "present," which is not satisfied by video conferencing.

In addition to the bare meaning of the words, we also consider the context of the words in Rule 43. "'[T]he meaning of statutory language, plain or not, depends on context.'" *Bailey v. United States,* 516 U.S. 137, 145, 116 S. Ct. 501, 506, 133 L. Ed. 2d 472 (1995) (citations omitted). Rule 43 (a) requires a defendant's "presence" not only at sentencing, but at all stages of trial. The rights protected by Rule 43 include the defendant's constitutional Confrontation Clause and Due Process rights, and the common law right to be present. *See, e.g., United States v. Gregorio,* 497 F.2d 1253, 1258 (4th Cir. 1974) (explaining scope of Rule 43 protection). Although there is no Confrontation Clause right at sentencing, this right is applicable to the other stages of trial. *See Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996) (stating no Confrontation Clause right at sentencing), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). The Supreme Court has interpreted the Confrontation Clause, with certain exceptions, to guarantee a defendant a face-to-face meeting with witnesses appearing before the trier of fact. *See Maryland v. Craig*, 497 U.S. 836, 849, 110 S. Ct. 3157, 3165, 111 L. Ed. 2d 666 (1990). Video conferencing would seemingly violate a defendant's Confrontation Clause rights at those other stages of trial. The scope of the protection offered by Rule 43 is broader than that offered by the Constitution, and so the term "present" suggests a physical existence in the same location as the judge. This means that, for the purposes of sentencing, a defendant must

22

be at the same location as the judge to be "present." *See Brown v. Gardner,* 513 U.S. 115, 118, 115 S. Ct. 552, 555, 130 L. Ed. 2d 462 (1994) ("there is a presumption that a given term is used to mean the same thing throughout a statute"). Considering the context of the term "present" in Rule 43(a) indicates that a defendant must physically be in the courtroom.

The context of the rest of Rule 43 supports the interpretation that "presence" means a defendant's physical presence in court. The language of 43(b) is instructive to the meaning of "presence" in 43(a), because 43(b) defines the situations in which a defendant waives the right to be present. Rule 43(b) states that "the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial, . . . after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom." The words "initially present" indicate that the defendant is physically in the courtroom, and may be removed or excluded "from the courtroom" for certain behavior. It would be inconsistent for the word "present" to mean "in sight" in (a), as the dissent suggests, and for the word to mean physically present in the courtroom, which is the import of the language in (b). This inconsistency indicates that the term "present," as it is used in the Rule, must mean physical existence at the same place. The context of the Rule negates the dissent's reading of "presence."

The dissent attempts to bolster its conclusion by reference to Rule 2. We do not believe that Rule 2 can aid our construction of Rule 43 in this instance. Rule 2 instructs that:

> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

23

FED. R. CRIM. P. 2. The context of Rule 43 indicates, as explained above, that the term "presence" requires physical presence. Although Rule 2 is a rule of statutory construction, Rule 2 does not require that a Rule be construed in contravention of its clear language.[33]

Reference to the Advisory Committee Notes to Rule 43 bolsters the contextual interpretation of the meaning of "presence." The Advisory Committee Notes are instructive on the drafters' intent in promulgating the federal rules. *See Williamson v. United States,* 512 U.S. 594, 614-15, 114 S. Ct. 2431, 2442, 129 L. Ed. 2d 476 (1994) (Kennedy, J., concurring) (listing cases taking Advisory Committee Notes as authoritative evidence of intent). The Notes suggest that the drafters of the Rule used "present" to mean physically being in the courtroom. When Rule 43 was adopted, it was meant to codify the right to be personally present. The Notes from the 1944 adoption state:

> The first sentence of the rule setting forth the necessity of the defendant's presence at arraignment and trial is a restatement of existing law. *Lewis v. United States,* 146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1892); *Diaz v. United States*, 223 U.S. 442, 455, 32 S. Ct. 250, 56 L. Ed. 500 (1912).

FED. R. CRIM. P. 43 advisory committee's note. The Supreme Court in *Lewis* equated the right to be present with "the right to be personally present," and repeatedly discussed whether the defendant was "personally present in court." *Lewis*, 146 U.S. at 372-73, 13 S. Ct. at 137. The

---

[33] The dissent suggests that the "practical necessities" require video conferencing. We are sympathetic to the expense and delay incurred by transporting prisoners, however, the decision whether this expense and delay is "justifiable" is the type of decision that should be considered by the drafters of the Rules.

intent to restate the law in *Lewis* suggests that the use of the word "present" connotes personal presence.

Other Advisory Committee Notes from the 1944 adoption support this interpretation. The Notes that relate to the current version of Rule 43(c)(2) state:

> The fourth sentence of the rule, empowering the court in its discretion, with the defendant's written consent, to conduct proceedings in misdemeanor cases in defendant's absence adopts a practice prevailing in some districts comprising very large areas. In such districts appearance in court may require considerable travel, resulting in expense and hardship not commensurate with the gravity of the charge, if a minor infraction is involved and a small fine is eventually imposed. The rule, which is in the interest of defendants in such situations, leaves it discretionary with the court to permit defendants in misdemeanor cases to absent themselves and, if so, to determine in what types of misdemeanors and to what extent.

FED. R. CRIM. P. 43 advisory committee's note. The Note indicates that the drafters of the Rules were aware that moving prisoners to the courthouse will often cause delay and expense in large geographic areas. Providing that a defendant's "presence [is] not required" for misdemeanor cases indicates that the drafters believed that for such cases, the practicalities outweighed a defendant's need to be physically present. FED. R. CRIM. P. 43(c)(2). Given the drafters' creation of an exception to the presence requirement where the practicalities favor such an exception, courts should be reluctant to create other exceptions based on similar practical considerations.

Additionally, the Notes to the 1974 Amendment, which explain the language of current

Rule 43(b)(3), suggest that a defendant is not present if teleconferencing is used:

> The concurring opinion of Mr. Justice Brennan [in *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)] stresses that the trial judge should make a reasonable effort to enable an excluded defendant "to communicate with his attorney and, if possible, to keep apprised [sic] of the progress of the trial." 397 U.S. at 351, 90 S. Ct 1057. The Federal Judicial Center is presently engaged in experimenting with closed circuit television in courtrooms. The experience gained from these experiments may make closed circuit television readily available in federal courtrooms through which an excluded defendant would be able to hear and observe the trial.

FED. R. CRIM. P. 43 advisory committee's note. The Note indicates that closed-circuit television does not enable a defendant to be "present" under (a), but rather may be used when "continued presence [is] not required" under (b)(3). This implies that the drafters would believe that a defendant is not "present" when video conferencing is used for sentencing.

The interpretation of Rule 43 can also be aided by comparing the Rule with other rules of procedure. The language of Rule 43 may be compared with the language in Federal Rule of Civil Procedure 43(a) ("Civil Rule 43(a)"), which allows for video conferencing. Civil Rule 43(a) provides:

> In every trial, the testimony of witnesses shall be taken in open court . . . The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.

FED. R. CIV. P. 43(a). The Advisory Committee Notes for the 1996 amendments to Civil Rule

26

43(a) explain:

> Contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.
>
> . . . .
>
> Other possible justifications for remote transmission must be approached cautiously.

FED. R. CIV. P. 43 advisory committee's note. The Note indicates a clear preference for live in-court testimony. Based on the Note, it is unlikely that the drafters of the Rules would agree that a person is "present" for the purposes of Criminal Rule 43 because that person is on a video screen. Civil Rule 43 also indicates that, where the drafters believe that video conferencing is appropriate, the drafters will make provision in the Rules for the use of the technology.

The Notes to Civil Rule 43 emphasize the importance of presenting testimony in court. The importance of in-court proceedings certainly does not diminish in the context of a criminal trial. There is a gravity to the sentencing process because the defendant will be deprived, possibly indefinitely, of his liberty. Sentencing a defendant by video conferencing creates the risk of a disconnect that can occur because "[t]he immediacy of a living person is lost." *Stoner v. Sowders,* 997 F.2d 209, 213 (6th Cir. 1993) (considering whether video depositions are as good as live testimony). "In the most important affairs of life, people approach each other in person, and

27

television is no substitute for direct personal contact.  Video tape is still a picture, not a life. " *Id.* In light of the value of face-to-face sentencing, we find the logic in the Notes to Civil Rule 43 to be equally applicable to Criminal Rule 43 — i.e., transmission cannot be justified by showing that it is inconvenient for the defendant to attend the sentencing.

We conclude that sentencing a defendant by video conferencing does not comply with Rule 43 because the defendant is not "present."   We refrain from interpreting Rule 43 in a matter at odds with the clear import of the language of Rule 43 and the Advisory Committee Notes.[34] "Absent a determination by Congress that closed circuit television may satisfy the presence requirement of the rules, [we are] not free to ignore the clear instructions of Rule[] . . . 43." *Valenzuela-Gonzalez v. United States Dist. Court,* 915 F.2d 1276, 1281 (9th Cir. 1990).

For the foregoing reasons the sentences of Edmondson are VACATED and the matter is REMANDED for his sentencing consistent herewith.

Judge POLITZ, dissenting as to Part VI:

In an issue of first impression requiring *de novo* review,[35] Edmondson contends that the district court's use of sentencing by video conferencing violated Rules 32 and 43 of the Federal Rules of Criminal Procedure.

Rule 32 requires that the court "address the defendant personally" at the imposition of

---

[34]    We determine that sentencing by video conference violates Rule 43, and therefore we do not address whether it also violates Rule 32.

[35]    **In re Taylor,** 132 F.3d 256 (5th Cir. 1998).

sentence.[36]  Rule 43 also provides as follows:

> **(a) Presence Required.**  The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.[37]

There are certain exceptions in Rule 43 to the presence requirement, none of which are applicable here.[38]

Edmondson contends that by sentencing him via video conferencing that the district judge did not address him "personally," in violation of Rule 32.  He also maintains that because he appeared by video he was not "present" at the sentence, as required by Rule 43(a).  He relies on **Valenzuela-Gonzalez v. United States Dist. Ct. for the Dist. of Arizona**[39] for this second proposition.  In **Valenzuela-Gonzalez**, the Ninth Circuit held that arraignment by video violated

---

[36]  Fed. R. Crim. P. 32(c)(3)(C).

[37]  The scope of Rule 43 is much broader than normal due process protections, **United States v. Gordon**, 829 F.2d 119 (D.C. Cir. 1987), and encompasses the common law concept that after an indictment is handed down, "nothing shall be done in the absence of the prisoner."  **Id.** at 124 n.4 (quoting **Lewis v. United States**, 146 U.S. 370, 372 (1892)).

[38]  For example, a defendant's presence is not required for organizational defendants, for minor crimes, for conferences solely on questions of law, or for correction of sentences under Rule 35. Fed. R. Crim. P. 43(c).  Defendants may also be excused from court proceedings by voluntarily excusing themselves either through disruption or choice.  Fed. R. Crim. P. 43(b).

[39]  915 F.2d 1276 (9th Cir. 1990).

29

Rules 10 and 43 of the Federal Rules of Criminal Procedure.[40]  Edmondson contends that video sentencing, like video arraignment, violates the Federal Rules.

The government, in response, asserts that Edmondson and the district judge were essentially in the same location because they were able to see and hear each other clearly and because Edmondson was able to confer fully with his counsel, who was physically present with him in Sherman, Texas.  The government also notes the importance of the use of video sentencing, including expedience in concluding the sentencing process, and the obvious very significant savings of judicial resources and the direct and indirect expenses thus avoided by the court, government, and defense.

In determining whether the Federal Rules of Criminal Procedure were violated, I am persuaded that we should first examine the language of the Rules, giving that language its plain, common-sense meaning[41] and construing the language to secure procedural simplicity and eliminate unjustifiable expense and delay.[42]  In so doing, we should note that no court has yet addressed this precise issue.  "Presence," as required by Rule 43, is defined in Black's Law Dictionary as an "[a]ct, fact, or state of being in a certain place and not elsewhere, or *within sight or call*, at hand, or in some place that is being thought of."  Black's Law Dictionary 1183 (6th ed. 1990) (emphasis added).  *See also* Webster's Third New International Dictionary 1793 (1976) (defining "presence" as "the condition of being within sight or call, at hand, or in a place being

---

[40]  Rule 10 provides that "[a]rraignment shall be conducted in open court."  Fed. R. Crim. P. 10.

[41]  **United States v. Ron Pair Enters., Inc.**, 489 U.S. 235 (1989).

[42]  *See* Fed. R. Crim. P. 2.

thought of").[43]

Notwithstanding the foregoing meaning of "presence," reflecting that a defendant is "present" when "within sight or call," I am aware of contrary interpretations suggesting that "present" requires physical presence in a location. For example, besides the "within sight or call" definition, dictionaries also define "presence" and "present" as connoting physical existence in a place.[44] Further, I am aware that "presence," as used in other parts of Rule 43[45] and as discussed in the advisory committee notes,[46] suggests physical presence. These sources would apply the aspect of the "presence" definition indicating physical presence in a location. Presence, however, is not limited solely to physical existence. As the alternate definitions state, presence can also be accomplished by being "within sight or call." Although the physical existence definition is

---

[43]   The district court noted that many cases invalidating proceedings under Rule 43 involved situations in which defendants were physically absent from the proceedings and were not participating in any manner. *See, e.g.,* **United States v. Rodriguez**, 23 F.3d 919 (5th Cir. 1994).

[44]   *See* Black's Law Dictionary 1183 (6th ed. 1990) (also defining "presence" as the "existence of a person in a particular place at a given time particularly with reference to some act done there and then"); Webster's Third New International Dictionary 1793 (1976) (defining "present" as "being in one place and not elsewhere").

[45]   An exception to a defendant's presence in Rule 43(b) allows the defendant to be removed "from the courtroom" after being "initially present," suggesting that the defendant is to be physically present in the courtroom unless an exception applies.

[46]   For example, the notes to the 1974 Amendment imply that closed-circuit television would not enable a defendant to be present, as do the notes to the 1944 Adoption, which expressly do not require a defendant's presence for misdemeanor cases because of the travel and hardship involved. *See also* Fed. R. Civ. P. 43(c) (reflecting a decision to allow live video testimony for "good cause shown" in civil cases).

certainly a sustainable position, giving appropriate effect to the clear intent of Rule 2 mandating a just determination in criminal proceedings and directing us to construe the Rules so as to eliminate unjustifiable expense and delay, requires that I conclude that the more appropriate view of "presence" includes the "within sight or call" aspect of the definition. I am persuaded that we should give it that meaning herein. Having said this, I am fully aware of the force of the majority's reasoning. I feel compelled by prudence, however, to read the Rules so as to give the district courts a critically needed flexibility herein.

Considering next the meaning of being "personally" addressed, I find that the right of presence at sentencing in Rule 43 and the right of allocution in Rule 32 are related and often have been combined.[47] The common law right of allocution permitted the defendant to personally ask the court for leniency and to have that request considered by the court in sentencing.[48] Further, the dictionary defines "personally" as "in person."[49] It therefore appears that the requirement in Rule 32(c)(3)(C) that the court "address the defendant personally" at sentencing means that the district judge, and not someone else, speak directly to the defendant. I perceive nothing inherent in the meaning of "personally" or "in person" that mandates a face-to-face encounter; rather, there need only be a personal one-on-one interaction between the judge and the defendant.

Turning to the case at bar, I would reject Edmondson's contention that **Valenzuela-Gonzalez** prohibits the use of sentencing by video conferencing. In one portion of the opinion, our sister circuit colleagues stated that Rule 10 and Rule 43 "together" required the district court

---

[47] **United States v. Moree**, 928 F.2d 654 (5th Cir. 1991).

[48] **Green v. United States**, 365 U.S. 301 (1961).

[49] Webster's Collegiate Dictionary 867 (10th ed. 1994).

32

to conduct arraignments with the defendant physically present in the courtroom.[50]  Later in the

opinion, they stated that "arraignment by closed circuit television does not constitute substantial

compliance with *either* Rule 10 *or* Rule 43."[51]  They also expressed concerns about sentencing.

I appreciate our sister circuit colleagues' concerns, but decline to accept their conclusion.

It is my perception that **Valenzuela-Gonzalez** fails to recognize the alternative meaning of

presence, focusing exclusively on the physical presence notion.  Further, although our colleagues

found that video arraignment violated provisions of both Rule 10 and Rule 43, the "open court"

language so dominant there presents no issue in the case before us.[52]  Finally, I cannot agree with

their conclusion, persuaded that it does not properly acknowledge and apply the simplicity and

expedience mandate of Rule 2.

Having considered the meaning of the Rules 32(c)(3)(C) and 43(a), I am persuaded

beyond peradventure that Edmondson was "personally" addressed and "present" at his sentence

as required by those rules.  The room in Beaumont where the judge was located and the video

conference room in Sherman where Edmondson, his attorney, and the Assistant United States

Attorney were located, contain identical equipment.  Each room had a camera and two 33-inch

---

[50]  **Valenzuela-Gonzalez**, 915 F.2d at 1280.

[51]  **Id.** at 1281 (emphasis added).

[52]  I note that although the public was able to be present in both the Beaumont and Sherman conference rooms the record seems to indicate that the Sherman conference room is of such size as to have possibly excluded family members of defendants or other observers in the past.  At such time as video conferencing may be allowed, we should encourage district courts, in order to make full use of this technology and to avoid possible problems with public exclusion, to use video conferencing in facilities where the public can have full access, such as existing courtrooms.

television monitors that could be set to either a full or split screen view. One monitor gave almost a full view of the room in Sherman, including the tables at which the parties were located. The second monitor in each conference room gave a full view of the district judge. Microphones were located next to the parties and the video operator could focus in more closely on anyone speaking.

Using this technology, Chief Judge Schell was able to communicate clearly with Edmondson and the other parties in the Sherman conference room. He was able to see the parties and ask the defendants and their attorneys questions. The attorneys and the defendants likewise were able to see and respond to the judge. The judge was able to interact with and observe the demeanor and body language of the defendants through real-time video communication.[53] This interaction in the video conference results in far superior observation of demeanor for credibility assessments than judges and juries experience when observing a witness who is testifying by video deposition, a practice that long has been accepted by the courts.

Edmondson also could not have been more "personally" addressed had he been standing a few feet in front of the judge in Beaumont, Texas. The judge, and not another person, was able to speak directly to the defendant, and not another person, in a one-on-one interaction and exchange, thus satisfying the requirements of Rule 32. Similarly, although he was not physically located in front of the judge, Edmondson was also "present" for the imposition of sentence because he was "within sight or call," was "at hand," and was able to participate directly in the

---

[53] *But cf*. **United States v. Reynolds**, 44 M.J. 726 (Army Ct. Crim. App. 1996) (prohibiting use of a pre-trial proceeding by telephone under a military rule "very similar" to Rule 43 because the parties would not be able to see and observe each other).

proceeding both with the court and his attorney.[54]

The disposition I would reach today would give the required regard to the practical necessities involved herein. The round trip from Beaumont to Sherman, Texas is 630 miles. Sentencings by video conference manifestly would save significant time and travel expenses of the judge and the judicial staff, other court personnel, prosecutors and defense counsel, and their staffs. I am also sensitive to the reality that video conferences make possible more prompt sentencing.[55] As I have noted, Rule 2 of the Federal Rules of Criminal Procedure aptly states: "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." It is my view that we should recognize that face-to-face sentencing for each and every case is a preference that we no longer should insist on.[56]

---

[54] In so holding, I recognize the potential for concern if defense counsel was not present with the defendant at sentencing, but instead was either in the courtroom with the judge or at another location by video link. The risk exists that effective and secret privileged communications, and possibly zealous and adequate representation of the client, might not occur if defense counsel were at a different location than the defendant. *See* Fredric I. Lederer, *Technology Comes to the Courtroom, and . . . .*, 43 Emory L.J. 1095, 1106-07 (1994). I emphasize that nothing in the disposition I propose endorses sentencing by video conferencing where the defense attorney is not personally present with the defendant.

[55] It has long been noted that both the government and the defendant have an interest in the prompt resolution of criminal charges. **Ecker v. Scott**, 69 F.3d 69 (5th Cir. 1995); *see* **United States v. Hughey**, 147 F.3d 423, 432 (5th Cir. 1998) (noting the "general interest in prompt and efficient administration of justice").

[56] I am keenly aware of the concern that such procedures might be viewed with some discomfort. I underscore that defendants and judges would still be able to "look each other in

35

Accordingly, I would conclude and hold that Rules 32 and 43 of the Federal Rules of

Criminal Procedure were not violated when Edmondson was sentenced utilizing the video

conference technology.[57]

---

the eyes."  I am also confident that the individualized attention
district judges have traditionally displayed in  sentencing
defendants would continue, whether that attention comes via video
conferencing or in face-to-face encounters.

[57]  If my view had prevailed, I would emphasize that it
addresses only the sentencing proceeding. This decision approving
sentencing via video conferencing would be buttressed in this
case because there was no testimony by witnesses.  We necessarily
would have to reserve for another day any confrontation clause
issue which such witnesses might occasion or which might arise at
other phases of the criminal process.