In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1926

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER R. THOMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:00-cr-50002-1—**Philip G. Reinhard**, *Judge.*

ARGUED FEBRUARY 9, 2010—DECIDED MARCH 19, 2010

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Christopher Thompson violated the conditions of his supervised release in late February 2009, and the district court held a revocation hearing in March of that year. Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure establishes the procedures that apply in a supervised-release revocation hearing, and the judge followed these procedures—with one exception. Although Thompson, his attorney, and

the prosecutor were present in the federal courthouse in Rockford, Illinois, the judge participated via video-conference from Key West, Florida. Thompson's appeal requires us to confront a question of first impression for federal courts of appeals: whether holding a supervised-release revocation hearing by videoconference violates Rule 32.1(b)(2). We hold that it does. Accordingly, we vacate Thompson's term of reimprisonment.

## I. Background

In November and December 1999, Christopher Thompson robbed two banks near Rockford, Illinois. He pleaded guilty and was sentenced to 102 months' imprisonment and 5 years' supervised release. After serving his prison term, he was released on supervision; within months he was caught using illegal drugs. Supervised release was revoked and he was returned to prison for six months. Not long after completing this brief term of reimprisonment, Thompson was arrested again—this time for driving under the influence of alcohol, operating an uninsured motor vehicle, driving with a suspended license, speeding, and improper lane usage. He also failed to notify his probation officer of his arrest within 72 hours, as required by his conditions of release. The government again sought to revoke supervised release and return Thompson to prison.

On March 18, 2009, the district court held an initial hearing, appointed a federal defender to represent Thompson, and scheduled a revocation hearing for March 25.

Although all parties were present in the Rockford court-
house for this initial hearing, the judge participated by
videoconference from Key West, Florida. At the revoca-
tion hearing a week later, the judge again appeared
by videoconference from Key West; everyone else was
assembled in the judge's courtroom in Rockford. Thomp-
son's counsel objected, contending that this procedure
violated Rule 32.1. The district court overruled the ob-
jection, commenting:

> The court will state for the record that, of course,
> everybody is in the court in Rockford except for me.
> I'm in the courthouse in Key West, Florida. We're
> doing this by video conferencing. I can both see and
> hear everybody in the courthouse in Rockford and can
> comprehend everything that has transpired.

> The court believes that video conferencing for a super-
> vised release hearing meets the standards of due
> process, that there's no case law that would prohibit it
> nor any rule or statute that would prohibit it under
> the circumstances of the supervised release. . . . [I]t is
> the court's ruling that we can proceed, and I will
> overrule the defendant's objection.[1]

Thompson admitted the allegations except for the drunk-
driving charge, and the district court heard statements

---

[1] The record does not indicate whether the videoconferencing
technology permitted the individuals in the Rockford court-
house to see the judge or whether those individuals could only
hear the judge. For purposes of discussion, we assume that
all parties could see and hear one another.

from counsel for both parties and from Thompson himself. Although the probation officer recommended eight months' reimprisonment, the judge revoked supervised release and imposed a term of twelve months in prison and one year of supervised release. Thompson appealed, challenging the judge's decision to conduct the revocation hearing by videoconference.

## II. Discussion

The issue on appeal—whether the use of video-conferencing to conduct a supervised-release revocation hearing violates the Federal Rules of Criminal Procedure or alternatively, the Fifth Amendment's Due Process Clause—is a question of law that we review de novo.[2] *United States v. Clark*, 538 F.3d 803, 808 (7th Cir. 2008). Rule 32.1 governs supervised-release revocation hearings and provides in relevant part:

> Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to . . . an opportunity to appear, present evidence, and question any adverse witness unless the court

---

[2] The government confesses error, conceding that holding Thompson's revocation hearing by videoconference violated Rule 32.1; its brief does not address Thompson's alternative due-process argument. Because of this concession, we appointed an amicus to defend the district court's procedure. We thank Barry Levenstam, Andrew Weissmann, and Sharmila Sohoni of Jenner & Block for ably discharging this responsibility.

determines that the interest of justice does not require the witness to appear[,] . . . and an opportunity to make a statement and present any information in mitigation.

FED. R. CRIM. P. 32.1(b)(2). Rather than commencing his analysis with the language of this rule, Thompson looks first to Rule 43, which provides that a defendant "must be present" at "sentencing." FED. R. CRIM. P. 43(a)(3).[3] Three circuits have held that Rule 43's "presence" requirement commands that all parties and the judge be physically present in the same courtroom for sentencing. *See United States v. Torres-Palma*, 290 F.3d 1244, 1247-48 (10th Cir. 2002) (remanding for resentencing where judge appeared via videoconference); *United States v. Lawrence*, 248 F.3d 300, 305 (4th Cir. 2001) (vacating sentence where defendant appeared via videoconference); *United States v. Navarro*, 169 F.3d 228, 238-39 (5th Cir. 1999) (vacating sentence where judge appeared via videoconference).

Thompson argues that a supervised-release revocation hearing at which the judge may impose a prison term is indistinguishable from an initial sentencing proceeding. Accordingly, he reasons, Rule 43 applies to revocation hearings, and because Rule 43 requires the defendant's physical presence before the judge, the district court was prohibited from conducting the revocation hearing by videoconference. This argument

---

[3] The government also bases its argument in part on the application of Rule 43 to revocation proceedings.

misses the mark. The problem is not with Thompson's contention that Rule 43 requires the physical presence of all participants in the same courtroom; he may well be right that it does, although we need not decide today whether to join the consensus among the circuits on this point. Instead, the flaw in Thompson's argument is its assumption that Rule 43 applies to revocation hearings. By its own terms, Rule 43 governs only "(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." If Rule 43 were meant to apply to revocation hearings, it would say so explicitly. Indeed, the Advisory Committee Notes to Rule 43 explain that the rule does not apply to "hearings on motions made . . . after trial." FED. R. CRIM. P. 43 advisory committee's note 1. A supervised-release revocation hearing is obviously a posttrial proceeding.

Nor, as Thompson asserts, is the revocation of supervised release the precise equivalent of a sentencing hearing; the rights at stake in each proceeding are distinguishable. The Supreme Court long ago noted that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Because a revocation hearing is not part of a criminal prosecution, a defendant at a revocation hearing is not owed the "full panoply of rights" due a defendant at sentencing. *Id.* Although the revocation hearing is some-times referred to colloquially as a "resentencing," the controlling statute does not use that term; instead, 18

U.S.C. § 3583(e)(3) authorizes the court, once a violation of supervised release is proven, to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute." By its terms—and based on the well-established difference in the procedural scope of these proceedings—Rule 43 is inapplicable to supervised-release revocation hearings.

Thompson also offers an alternative argument grounded in the text of Rule 32.1—the place where his analysis should have started. Recall that Rule 32.1(b)(2) provides that before revoking a defendant's supervised release, the court must give the defendant "an opportunity to appear" for purposes of presenting evidence, questioning witnesses, arguing in mitigation, and making a statement to the court. Thompson argues that the "appearance" mandated by Rule 32.1(b)(2) requires the defendant and the judge to be physically present in the same courtroom. His contention is correct; this reading of the rule is consistent with the meaning of "appear" as used in this context as well as the traditional understanding of an accused person's "appearance" before a court empowered to deprive him of his liberty.

More specifically, Rule 32.1(b)(2) provides that prior to revocation of supervised release, a defendant is "*entitled* to" an "opportunity to appear," to "present evidence[] and question any adverse witness," and to "make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(b)(2) (emphasis added). As used in this context, the word "appear" means "to

come formally before an authoritative body." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 103 (1981). *Black's Law Dictionary* further defines "appearance" as "[a] coming into court as a party or interested person, or as a lawyer on behalf of a party or interested person." BLACK'S LAW DICTIONARY 113 (9th ed. 2009). These definitions suggest that the "appearance" required by this rule occurs only if the defendant comes into the physical—not virtual—presence of the judge.

Moreover, a defendant's "opportunity to appear" under this rule exists not in isolation but in conjunction with his right to "present evidence," to "question any adverse witness," and to "make a statement and present any information in mitigation." A defendant's appearance in court is the means by which he effectuates the other rights conferred by the rule; appearing before the court allows the defendant to plead his case *personally* to the judge who will decide whether to revoke supervised release and return him to prison. This is particularly true in light of the defendant's right to "make a state-ment and present any information in mitigation." FED. R. CRIM. P. 32.1(b)(2)(E). This subsection guarantees a right of allocution before revocation; we have held that the right of allocution at a revocation hearing is essentially the same as the right of allocution at sentencing guaranteed by Rule 32(i)(4)(A)(ii). *See United States v. Pitre*, 504 F.3d 657, 662 (7th Cir. 2007) (holding that the right to allocution in Rule 32.1 "is not substantively different than the right [to allocution] created by Rule 32"). This common-law right, codified in both rules, ensures that the defendant has the opportunity to "personally

address the court" before punishment is imposed. *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991). This face-to-face meeting between the defendant and the judge permits the judge to experience "those impressions gleaned through . . . any personal confrontation in which one attempts to assess the credibility or to evaluate the true moral fiber of another." *Del Piano v. United States*, 575 F.2d 1066, 1069 (3d Cir. 1978) (discussing allocution); *see also Green v. United States*, 365 U.S. 301, 304 (1961) ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). Without this personal interaction between the judge and the defendant—which videoconferencing cannot fully replicate—the force of the other rights guaranteed by Rule 32.1(b)(2) is diminished.

The Sixth Circuit's recent decision in *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009), supports this interpretation of Rule 32.1(b)(2)'s "opportunity to appear." *Terrell* involved a hearing before the U.S. Parole Commission; the issue was whether the use of videoconferencing satisfied 18 U.S.C. § 4208(e)'s requirement that "[t]he prisoner shall be allowed to appear and testify on his behalf at the parole determination proceeding." The Sixth Circuit held that "to appear mean[s] to be physically present*." Terrell*, 564 F.3d at 451. Although the question in *Terrell* was whether the *defendant*'s appearance via videoconference violated the parole statute, the result must be the same when it is *the judge* whose presence is virtual. The important point is that the form and substantive quality of the hearing is altered when a key

participant is absent from the hearing room, even if he is participating by virtue of a cable or satellite link. This is particularly true when the one who is absent has the power to impose a prison term.

Our reading of Rule 32.1(b)(2) also comports with the traditional legal understanding of a person's "appearance" before a court when his liberty is at stake in the proceeding; in this situation, to "appear" has generally been understood to require the defendant to come personally before a judicial officer. Not only is this intuitive—videoconferencing technology was obviously unknown at common law—but the Supreme Court's decision in *Escoe v. Zerbst*, 295 U.S. 490 (1935) (Cardozo, J.), confirms this understanding. In *Escoe* the Court considered the propriety of a judge's order summarily revoking a criminal defendant's probation without a hearing. The Court held that an ex parte revocation of probation violated the applicable federal probation statute, which required the probationer to be "brought before the court" before probation could be revoked and a prison term imposed. *Id.* at 492. The Court held that "the end and aim of an appearance before the court" under the statute was to "enable an accused probationer to explain away the accusation," *id.* at 493, and this required "bringing the probationer into the presence of his judge," *id.* at 494. Although a hearing by videoconference is not the same as no hearing at all, the Court's interpretation of the statute at issue in *Escoe* informs our interpretation of the "appearance" required by Rule 32.1(b)(2).

The rules of procedure specifically mention the use of videoconferencing in other contexts, and the treatment of this alternative form of "appearance" also supports our conclusion that the opportunity to appear guaranteed by Rule 32.1(b)(2) is not satisfied by videoconferencing. For example, Rule 5, which governs initial appearances, permits videoconferencing only if the defendant consents. *See* FED. R. CRIM. P. 5(f). Similarly, Rule 10 permits the use of videoconferencing for arraignments, but again only when the defendant consents.[4] FED. R. CRIM. P. 10(c). That videoconferencing is permitted only pursuant to a specifically enumerated exception and with the defendant's consent demonstrates that the use of this technology is the exception to the rule, not the default rule

---

[4] We note as well that the treatment of videoconferencing in the Rules of Civil Procedure also suggests that videoconferencing is the exception rather than the rule. Rule 43 provides: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." FED. R. CIV. P. 43(a). Despite this provision, the Advisory Committee Note to the rule evinces a strong preference for live, in-court testimony as opposed to videoconferencing. FED. R. CIV. P. 43 advisory committee's note 1996 amend.; *see also Navarro*, 169 F.3d at 239 (making this point). Read in context with relevant criminal rules, Civil Rule 43 suggests that "where the drafters believe that video conferencing is appropriate, the drafters will make provision in the Rules for the use of the technology." *Navarro*, 169 F.3d at 239.

itself.[5] Accordingly, we read the "opportunity to appear" in Rule 32.1(b)(2) to exclude an "appearance" by videoconference. The district judge's participation in Thompson's revocation hearing via videoconference violated the rule.

This violation, however, is subject to harmless-error analysis. *See* FED. R. CRIM. P. 52(a). Remand is therefore necessary only if the government—or in this case, the amicus—demonstrates that the procedural error did not affect the outcome. *See United States v. Eubanks*, 593 F.3d 645, 655 (7th Cir. 2010). Yet the amicus has not explained why the error is harmless; this failure is telling. The judge's absence from the courtroom materially changes the character of the proceeding, and the amicus bears a heavy burden in showing that such a significant procedural shift was harmless. Rule 32.1(b)(2) establishes a procedure that requires the defendant's physical presence before the judge, and videoconferencing is not an adequate substitute. As one court has noted, "virtual reality is rarely a substitute for actual presence and . . . watching an event on the screen remains less than the

---

[5] The Advisory Committee is currently considering a proposed amendment to Rule 32.1. If adopted, the amendment, which would be codified as Rule 32.1(f), would provide: "On a defendant's request, the court may allow the defendant to participate in proceedings under this rule through video teleconferencing." The committee notes also state, "[t]he amendment does not address whether victims, witnesses, or others may participate in any hearing under Rule 32.1 through video teleconferencing or other means."

complete equivalent of actually attending it." *Lawrence*, 248 F.3d at 304. In short, there is no way to know what the judge would have done had he been present in Rockford and face-to-face with Thompson; we cannot conclude that the error was harmless.[6]

A judge's decision whether to send a defendant to prison requires a careful, qualitative, and individualized assessment of the offense and the offender; no matter how simple the case, this is never a mechanical or rote determination. At the end of the day, Rule 32.1(b)(2) reflects a conclusion that a judge cannot properly assess the defendant without the defendant's in-person appearance before the court. The rule's strictures are "mandatory in meaning as well as mandatory in form," *Escoe*, 295 U.S. at 494, and the form of the hearing required by the rule excludes videoconferencing.

VACATED and REMANDED.

---

[6] Because we hold that the judge's participation by video-conference violated Rule 32.1, we need not address Thompson's argument that holding the hearing by videoconference violated the Fifth Amendment's Due Process Clause.

---