# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41353

United States Court of Appeals
Fifth Circuit

**FILED**

May 24, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LAURA RAMOS-GONZALES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:

The dispute in this case arises from the district court's decision on remand to re-impose a special condition of supervised release on the Defendant-Appellant Ramos-Gonzales. Ramos-Gonzales pleaded guilty to transporting an undocumented alien into the United States. At sentencing, the district court imposed two special conditions of supervised release—a nighttime restriction and drug surveillance. Ramos-Gonzales appealed those conditions to this court, and this court remanded for resentencing on the grounds that the district court committed plain error in failing to explain the basis for the special conditions. At the subsequent sentencing hearing, the district court re-imposed the drug surveillance condition based on Ramos-

No. 16-41353

Gonzales's 2012 conviction for marijuana possession.  Ramos-Gonzales now appeals the district court's second judgment. We vacate the drug surveillance special condition and affirm the sentence as modified.

## I. Background

On October 4, 2015, Laura Ramos-Gonzales was arrested during her attempt to transport undocumented individuals into the United States under the rear seat of her vehicle in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(ii). On October 28, 2015, a Federal Grand Jury indicted Ramos-Gonzales on two counts of transporting an undocumented alien. On November 12, 2015, Ramos-Gonzales pleaded guilty to the first count pursuant to a written plea agreement. Following the plea, a presentence investigation report (PSR) was prepared, which recommended a Guidelines sentencing range of 8 to 14 months and a 3-year term of supervised release. Ramos-Gonzales did not object to these calculations. The subsequent sentencing proceedings, which represent the principal focus of this appeal, are divided into two stages, divided by an appeal and order issued by this court.

*First Sentencing*

On January 26, 2016, the district court adopted the PSR as the findings of the court and sentenced Ramos-Gonzales to 12 months in prison, followed by 3 years of supervised release and accompanied by a $100 Special Assessment. The district court imposed the "[s]tandard terms and conditions of supervision," and, importantly, imposed a "nighttime restriction of 12 midnight to 6:00 a.m. and drug surveillance."[1]  Ramos-Gonzales registered no

---

[1] The drug surveillance condition involves "periodic urine surveillance and/or breath, saliva and skin tests for the detection of drug abuse as directed by the probation officer." The costs of these "detection efforts" are assessed to the defendant, "based on ability to pay as determined by the probation officer."

2

No. 16-41353

objection to these additional conditions of supervised release at the sentencing hearing.

*First Appeal*

Ramos-Gonzales appealed despite previously failing to register an objection, arguing that the district court committed reversible plain error by imposing the drug surveillance and nighttime restriction conditions of supervised release. *See* Brief of Appellant, *United States v. Ramos-Gonzales*, No. 16-40146, 2016 WL 3770852, at *8–14 (July 7, 2016). In particular, she argued that the district court had failed to explain its reasons, and the record itself did not furnish independent evidentiary support for the restrictions. *Id.* at *9–10. With respect to the drug surveillance condition, Ramos-Gonzales argued that "there [was] absolutely no evidence that [she] currently uses illegal drugs," and pointed out that the PSR indicated that she first smoked marijuana at 14 years of age and had not engaged in such activity in 25 years. *Id.* at *9. She also pointed out that the offense charged against her had nothing to do with drug use, nor did any of her prior offenses. *Id.*

The Government moved to remand the case for reconsideration of the special conditions, agreeing with Ramos-Gonzales that "the district court commit[ed] reversible error by failing to explain the reasons for imposing special conditions of supervised release where the record is silent in support of the special conditions." The Government also agreed that the record "[did] not indicate how the supervised release special conditions of nighttime restriction and drug surveillance [were] related to the underlying offense of alien transporting or to the relevant statutory considerations under 18 U.S.C. § 3553(a)." *Id.* at 3. In particular, the Government stated that "[a]lthough Ramos has a 2012 conviction for possession of 44 pounds of marijuana and last smoked marijuana 25 years ago, no indication in the record exists that she has an illicit

3

No. 16-41353

drug problem to warrant drug surveillance requiring periodic urine and/or breath, saliva, and skin tests to detect drug abuse." *Id.*

We conducted an independent review of the case, and exercised our discretion to grant plain error relief, summarily remanding the case to the district court for resentencing. Order, *United States v. Laura Ramos-Gonzales*, No. 16-40146, at 2 (5th Cir. Aug. 17, 2016).

*Resentencing*

The district court conducted a resentencing hearing on September 27, 2016, at which time it reconsidered the special conditions. The district court vacated the nighttime restriction, because Ramos-Gonzales would be living with her children and because there was no evidence that the offense in question occurred at nighttime. The district court decided to maintain the drug surveillance condition, however. Ramos-Gonzales objected on the basis that she "didn't feel . . . the drug restrictions [applied to her] because [she had not] used drugs for many years." The district court replied: "Well you have a drug conviction. So that's going to stay and that's the way that goes."[2] Counsel for Ramos-Gonzales spoke to preserve her objection to the drug surveillance condition "as an invasion of privacy and a financial burden." A colloquy on those topics ensued. The district court concluded the discussion by asking: "Are you denying her drug conviction?" Counsel responded: "Not the conviction, your Honor. Just based on what's in the PSR is that her drug use is very old in time." The district court re-imposed the drug surveillance condition and concluded the hearing. Ramos-Gonzales filed this appeal.

---

[2] The district court was referring to Ramos-Gonzales's previous conviction for possession of 44.2 pounds of marijuana.

4

No. 16-41353

## II. Standard of Review

Where a defendant objects to special conditions of supervised release we review the district court's imposition of those conditions for abuse of discretion. *See United States v. Miller*, 665 F.3d 114, 134 (5th Cir. 2011).

## III. Discussion

A.

On appeal, Ramos-Gonzales argues that re-imposition of the drug surveillance condition was improper because the condition is not reasonably related to the relevant statutory factors that govern the imposition of conditions of supervised release,[3] and because the condition is not consistent with the Sentencing Commission's pertinent policy statements. *See United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (noting that a district court's ability to impose special conditions of supervised release is limited by statute). In particular, Ramos-Gonzales points out that her prior conviction did not involve personal drug use, so there is no evidence to justify the surveillance condition.

The Government responds that imposition of the drug surveillance condition based on the previous drug conviction addressed the sentencing factors of Ramos-Gonzales's "history and characteristics" as well as "protecting the public and adequately deterring the defendant from committing future criminal conduct." 18 U.S.C. § 3553(a). The Government also points out that notwithstanding Ramos-Gonzales's objection to the special drug surveillance

---

[3] Ramos-Gonzales offers the alternative argument that the district court's decision to re-impose the drug surveillance special condition on remand violated the law of the case doctrine and mandate rule insofar as this court's order pursuant to the first appeal rejected the 2012 conviction as a basis for that condition. She also argues that permitting the probation officer to determine the number of drug tests she would be required to undergo constituted an impermissible delegation of Article III authority. In light of our chosen holding in this case, we pretermit discussion of these alternative arguments.

No. 16-41353

condition, she did not object to the standard condition requiring periodic drug testing.

While district courts possess significant discretion in imposing conditions of supervised release, that discretion is nonetheless limited by 18 U.S.C. § 3583(d), which distinguishes between mandatory and special conditions of supervised release, and permits the court to impose special conditions only in certain circumstances. *See United States v. Paul*, 274 F.3d 155, 164–65 (5th Cir. 2001). In particular, the special conditions must be "reasonably related" to one of four factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need . . . to afford adequate deterrence to criminal conduct"; (3) "the need . . . to protect the public from further crimes of the defendant"; and (4) "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. §§ 3583(d)(1), 3553(a)(1) and (2)(B)–(D); *Paul*, 274 F.3d at 165; *United States v. Weatherton,* 567 F.3d 149, 153 (5th Cir. 2009). Moreover, "the conditions may not impose a 'greater deprivation of liberty than is reasonably necessary for the purposes set forth in' § 3553(a)." *United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013) (quoting 18 U.S.C. § 3583(d)(2)). Lastly, special conditions must be consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d)(3).

B.

We agree with Ramos-Gonzales that, on the facts of this case, any reasonable relationship between the drug surveillance special condition and the 2012 drug-related conviction would require evidence that Ramos-Gonzales actually used drugs. We view the more general connection between Ramos-Gonzales's prior conviction and the special condition imposed—that is, the fact

6

that both have something to do with drugs—as too superficial to justify imposition of the special condition.

Although the Government now attempts to defend the position that the drug surveillance condition is reasonably related to the history and characteristics of Ramos-Gonzales and the nature and circumstances of her prior conviction, this contention contradicts its concession at the first appeal that "[a]lthough Ramos has a 2012 conviction for possession of 44 pounds of marijuana and last smoked marijuana 25 years ago, no indication in the record exists that she has an illicit drug problem to warrant drug surveillance requiring periodic urine and/or breath, saliva, and skin tests to detect drug abuse." The description of her history and characteristics and the nature of her prior offense have not changed between appeals. The only variation in the record on second appeal is the district court's statement that the previous conviction was the basis upon which the special condition was imposed. There is no record evidence that Ramos-Gonzales engages in personal drug use, and so we cannot contemplate any criminal conduct that a surveillance-related special condition would detect or deter. *See United States v. Mahanera*, 611 F. App'x 201, 204 (5th Cir. 2015) (noting that where "the record reveals no evidence that [the defendant] has or had a drug or alcohol problem, and his offense did not involve drug or alcohol use," a special condition involving drug testing did not reasonably relate to the history and characteristics of the

No. 16-41353

defendant, to the nature of his offense, or to any need to deter him from future addiction-driven crimes).[4]

In sum, where there is no relevant evidence of drug use, the essential characteristic of a defendant that makes surveillance for drug use reasonable and appropriate is absent.[5] Accordingly, we conclude that the district court abused its discretion in imposing the special drug surveillance condition on Ramos-Gonzales. *See Miller*, 665 F.3d at 134.

C.

Although we hold that the drug surveillance special condition is not supported by the district court's reasons for its imposition in this case, we conclude that remand is unnecessary because Ramos-Gonzales will be required to undergo drug testing as a mandatory condition of supervised release regardless. 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(4). We note the legal distinction between the special and mandatory conditions of supervised release contemplated by the scheme of § 3583(d), yet we are satisfied that on these facts that the drug-related mandatory condition of supervised release

---

[4] Although *Mahanera* is potentially distinguishable from Ramos-Gonzales's situation insofar as the defendant's PSR in that case included no prior convictions or arrests for drug-related offenses, *id.* at 202, that potential distinction has no bearing on the key reason for the court's decision—lack of evidence showing drug use or abuse. *See id.*; *cf. Salazar*, 743 F.3d at 452 (noting that special condition prohibiting access to sexually stimulating materials not reasonably related to deterrence where there was no evidence that defendant's criminal activities were driven by access to such materials or that defendant had "a high potential for committing future sexual crimes").

[5] A further examination of the policy statements included in the Guidelines supports this view—the policy guidance on substance abuse-related special conditions provides that "[i]f the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol," it is appropriate for the district court to impose:

> (A) a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol; and (B) a condition specifying that the defendant shall not use or possess alcohol.

U.S.S.G. § 5D1.3(d)(4).

addresses any concerns relating to Ramos-Gonzales's potential drug use. Accordingly, no remand is necessary.[6]

## IV. Conclusion

For the reasons stated, we VACATE the special condition of supervised release and otherwise AFFIRM the sentence as modified.

---

[6] We also observe that the sentencing hearing following this court's remand was conducted by telephone, without the physical presence of the defendant. Despite our recognition that the defendant registered no objection to this procedure, we are constrained to note that no authority for such a procedure has been presented, nor have we been able to locate any. *See* Fed. R. Crim. Pro. 43. We take this opportunity to remind district courts of the solemnity of the criminal proceeding and of the contribution that the physical presence of all parties makes to the fairness, integrity, and public function of that proceeding. *Cf. United States v. Navarro*, 169 F.3d 228, 235–39 (5th Cir. 1999). Accordingly, we advise against conducting future sentencing hearings by telephone.

No. 16-41353

EDITH H. JONES, Circuit Judge, concurring:

I concur in this opinion and draw attention to its fn. 6, which states that there is no authority for the district court's conducting the resentencing hearing by telephone conference. From what this court learned at oral argument, a Federal Public Defender was present in court for the defendant, the Judge herself only by telephone, the defendant "participated" from a halfway house somewhere, and appellate counsel was unsure where the AUSA was during the resentencing "hearing." There is no indication that the defendant consented to this procedure. That no one objected, and all the professional parties to the proceeding found this process convenient does not make it proper.

Perhaps this measure was viewed as a simple extension of the practice of conducting sentencing by videoconferences. In such proceedings, the judge presides from another location, while the defendant, together with his or her family, and the AUSA are present in the court of conviction. The judge's face is on the two-way screen in the courtroom. Sentencing by videoconference is not an ideal way to run a criminal justice system. It removes the presence of the judge as a visible sign of the community's conscience and may deprive the judge of the ability to read the attitudes and body language of the defendant at the moment the judge must decide a sentence. Sentencing by videoconference seems even more troubling when, not uncommonly, evidence must be offered and ruled on at the proceeding. Despite these difficulties, videoconference sentencing has been practiced, when the defendant consents, as a measure of necessity in courts that are understaffed or confront a high volume of criminal cases. In a videoconference, at least, the judge wears a robe in a court-like room, and all parties behave as in an ordinary courtroom setting.

But as our opinion specifies, Rule 43(a)(3) mandates the defendant's "presence" at sentencing, and we have held that the defendant must first

consent before the court may conduct sentencing by videoconference. *United States v. Navarro*, 169 F.3d 228, 235 (5th Cir. 1999) (vacating sentencing where defendant did not consent to video-conference). *See also United States v. Lawrence*, 248 F.3d 300, 303–04 (4th Cir. 2001). An in-person proceeding allows the judge to "experience those impressions gleaned through . . . any personal confrontation in which one attempts to assess the credibility or to evaluate the true moral fiber of another." *United States v. Thompson*, 599 F.3d 595, 599 (7th Cir. 2010) (internal quotation marks and citations omitted).

Moreover, in contrast to Rule 43(a)(3), which makes no mention of video-conferencing, Rules 5(f) and 10(c) expressly authorize videoconferencing a defendant's initial appearance and arraignment only "if the defendant consents." Fed. R. Crim. Pro. 5(f), 10(c). It is therefore a fair inference that videoconferencing "is the exception to the rule, not the default rule itself." *Thompson*, 599 F.3d at 600–01.

Sentencing by telephonic conferencing goes far beyond videoconferencing in its lack of dignity and detachment from the moral drama of the criminal justice system. Transforming criminal sentencing from a formal court hearing into a telephonic conference—even on "minor" matters of subjugation to drug testing and evening curfew—immeasurably reduces the seriousness of the proceeding and threatens to compromise the openness of federal courts.

Not only was there no face to face meeting of the parties here, but even stranger, the defendant was in a halfway house somewhere while her Federal Public Defender attorney was only available to her, remotely, by telephone. Suppose a last-minute question had arisen on which the defendant needed counsel's advice? Suppose the AUSA had produced a witness for testimony on the matter being sentenced? Suppose one of the parties to this conversation—whether counsel or judge—was trying to multitask while halfway listening to

the voice on the other end of the courtroom line?[1]  There may be practical answers to these questions, but they do not override one's commonsense notion that listeners are often inclined to "tune out" audio without corresponding visual stimulation.  Nor do practical excuses override the symbolic significance of procedural formality by all participants and the physical proximity of the defendant to her counsel.[2]

There is no provision for telephonic sentencing in the Rules.  Conducting resentencing, to say nothing of initial sentencing, by telephonic conference reflects poorly on the dignity and integrity of federal court proceedings.  The Chief Judge's admonition for the panel is fn. 6 of this opinion is significant.

---

[1] It is possible that the telephonic nature of this proceeding led to the judge's becoming confused about the purpose of resentencing.  Although this court had ordered resentencing on the conditions of supervised release without restriction, the judge perfunctorily reimposed the special drug testing condition without any explanation and without any mention of the remand order.

[2] Worth noting are the Advisory Committee Notes to the 2002 Amendments to the Federal Rules of Criminal Procedure, appended to Fed. Rule Crim. Pro. 10.  The Notes explain in detail how carefully the innovation – permitting videoconferencing only for initial appearance and arraignment "with the defendant's consent" – must be applied.  In particular, the Notes advise courts to adopt standard procedures "for televising the video teleconference . . . conducive to the solemnity of a federal criminal proceeding."  Among the recommended measures are a room that reflects "the dignity of a federal courtroom" at the detention facility; ensuring that the judge or a surrogate can carefully assess the defendant's condition; and insuring that "counsel and the defendant (and even the defendant's immediate family) are provided an ample opportunity to confer in private."  Conferencing by telephone where the defendant's "presence" is required cannot match these features.