In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3628

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID L. SHANKS, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-CR-18 — **William C. Griesbach**, *Judge.*

SUBMITTED JUNE 9, 2020[*] — DECIDED JUNE 15, 2020

Before KANNE, SYKES, and BRENNAN, *Circuit Judges.*

PER CURIAM. David L. Shanks, Jr. did not attend his trial
for drug-distribution offenses, for which a jury found him
guilty and the district court entered a judgment of conviction.

---

[*] We have agreed to decide the case without oral argument because
the briefs and record adequately present the facts and legal arguments,
and oral argument would not significantly aid the court. Fed. R. App. P.
34(a)(2)(C).

Shanks challenges the judgment on two bases. First, he con-
tends that the district court did not comply with Rule 43 of
the Federal Rules of Criminal Procedure, which he argues re-
quires a defendant's presence in a courtroom at the start of
trial. Shanks's trial began before the judge and counsel at a
jail, not in a courtroom. Second, he argues that the court
clearly erred in finding that, through his disruptive conduct,
he knowingly and voluntarily waived his right to attend trial.
Because the district court permissibly began trial at the jail
and reasonably found that Shanks waived his right to attend
the remainder of his trial, we affirm.

## I.  BACKGROUND

While on supervised release for a prior drug crime, Shanks
was charged in January 2018 with participating in a drug-dis-
tribution conspiracy. The government charged that the con-
spiracy led to overdoses that resulted in a death and the seri-
ous bodily injury of two others. At an arraignment in Febru-
ary, counsel for Shanks reported that Shanks pled not guilty
and understood the charges. But a few days later, while de-
tained at Brown County Jail, Shanks fired that lawyer, and at-
torney Edward Hunt was appointed to serve as his new coun-
sel. Later, when the government filed a superseding indict-
ment, Shanks refused to enter a plea before a magistrate
judge. Instead, he challenged the court's jurisdiction, denied
understanding the charges against him, and said that he
wished to be silent.

After his next arraignment, Shanks continued to question
the legitimacy of the criminal process. First, Shanks refused to
talk with Hunt and told him that Hunt did not speak for
Shanks, prompting Hunt to move to withdraw. Shanks told

the judge: "Mr. Hunt does not speak for me, I speak for myself." The judge asked Shanks if he wanted to represent himself. Shanks responded, "I don't understand how," so the judge did not grant Hunt's motion to withdraw. At this hearing, Shanks also demanded to know "what jurisdiction I'm charged under." The judge explained that he was in federal court and charged for federal criminal violations, adding, "You've been through the system before, don't tell me you don't know what jurisdiction you're in." (In 2013, the same judge imposed a 66-month sentence on Shanks for crack-cocaine crimes.) After this hearing, a deputy U.S. marshal told the judge that Shanks had said that he did not intend to attend the trial. Shanks did not appear in federal court again.

At the final pretrial conference (which Shanks did not attend), the judge anticipated that Shanks might refuse to behave at or attend trial. He noted that, under Federal Rule of Criminal Procedure 43, Shanks could waive his right to remain in court if he became disruptive. The judge also considered matters of public interest: if Shanks said that he did not want to attend trial, or threatened to disrupt proceedings if brought to court, the judge would not order the U.S. marshals to forcibly bring Shanks to court, for fear of injuring Shanks or the marshals. Likewise, the judge decided against postponing the trial. The government had gathered over 50 witnesses, including experts, from across the country for the trial to start the next week, and the judge doubted that Shanks would improve his attitude if trial were delayed.

To assess Shanks's intentions, the judge issued an order for Shanks to appear at trial. When a marshal attempted to serve it on Shanks, Shanks refused to accept it.

Because Shanks refused to accept the trial summons, the judge decided to come to Shanks to start the trial. The judge understood Rule 43 to require a defendant's initial presence at trial before the defendant could waive the right to attend. Therefore, the judge, counsel, and a court reporter planned to begin the trial outside Shanks's cell at the Brown County Jail. It began on the morning of September 13, 2018, at the jail. After the judge put on the record his efforts to bring Shanks to court, Shanks denied understanding whatever the judge said to him:

> THE COURT: Mr. Shanks, you have indicated that you refuse to come to your trial; is that still your position?
>
> THE DEFENDANT: I never refused anything. I don't understand these proceedings.
>
> THE COURT: So you will come to your trial and attend your trial; is that right?
>
> THE DEFENDANT: I don't understand what I have to come to trial for.
>
> THE COURT: You're tried on a superseding indictment. We've had the arraignment, you've gone over it with your attorney, we've given you a copy of it.
>
> THE DEFENDANT: I haven't went over it with my attorney. The magistrate judge read the indictment, but I did not understand it. And I told the magistrate judge this at the time he read it.
>
> THE COURT: Well, there's no mystery. These are charges similar to others you've faced. You're charged with conspiracy to distribute controlled substances, multiple delivery of controlled substances and possession with intent to deliver a controlled substance.

You're also alleged to have—or it's alleged that a death resulted from one of the deliveries within the conspiracy and that serious bodily injury or harm occurred as a result of other deliveries.

Those are the charges you face. You understand that several of the counts you're facing carry mandatory life sentences. Your attorney has been prepared to represent you.

After the judge explained the charges and possible penalties, he asked Shanks, "Are you willing to come to court to attend your own trial?" Shanks refused to answer that question, no matter how many times the judge rephrased it:

THE DEFENDANT: I don't understand those charges or the allegations in the indictment.

THE COURT: Regardless of whether you understand them or not, are you coming to your trial?

THE DEFENDANT: I don't understand what I have to come to trial for, sir.

THE COURT: You don't need to understand them. If you want to profess your lack [of] understanding, just come to trial, we will take you to trial. Are you ready to go?

THE DEFENDANT: Your Honor, can someone please explain to me the nature of and cause of this action?

THE COURT: We've already explained it. It's very clear. You are charged with criminal violations of the federal law. If you do not [] come to your trial, we will put shackles on you and you will proceed to have a jury decide whether the government has proven guilt beyond a reasonable doubt.

THE DEFENDANT: I still don't understand the nature and cause of this action or what jurisdiction you operate in.

THE COURT: Okay. I'm not concerned—if you want to profess your lack of understanding, that's your right. No one

believes that you do not understand it. The question I'm asking is, will you come to court? Can we bring you to court?

THE DEFENDANT: I don't understand what I have to come to court for, sir.

THE COURT: You have to come to court for your trial.

THE DEFENDANT: My trial for what, sir?

THE COURT: For the crimes that I've already repeated to you.

THE DEFENDANT: I don't understand those crimes. I never hurt anyone.

Finally, Shanks would not say if he would forcibly resist attending court:

THE COURT: Are you going to fight us if we bring you to court?

THE DEFENDANT: I don't understand these charges, Your Honor.

THE COURT: Okay. Let the record reflect that—well, the record will reflect the defendant's insistence that he doesn't understand and his refusal to answer the question of whether he will willingly come to court and cooperate in his trial. Will you come to court and cooperate in your trial?

THE DEFENDANT: I don't understand what I have to come to court for, Your Honor.

In total, the judge asked Shanks more than ten times if he would attend trial cooperatively and received no reply. In light of this behavior, and knowing that Shanks refused to accept the judge's order to attend trial, the judge found that by "disruptive conduct" Shanks had waived his right to attend trial. To avoid harm to Shanks or others, the judge did not use

force to extract Shanks. The judge warned Shanks that by re-
fusing to come to court, he would be giving up his right to
testify on his own behalf, to which Shanks replied: "I have
given up nothing." The judge also told Shanks that, though
the judge could not provide him with live video or audio of
the trial while he was in jail, if he changed his mind about
coming to court, the marshals would transport him there. Be-
fore this exchange ended, Shanks spoke off the record with
his counsel, Hunt. Hunt then met with the prosecutor, who
later told the court on the record that Shanks wanted to "res-
urrect a previously withdrawn offer" that the government
had made, but the government declined to do so.

Jury selection began later that day, and after his four-day
trial, Shanks was convicted of all but one charge. During the
trial, outside of the jury's presence, the judge regularly asked
the marshals to report whether Shanks had changed his mind.
Each time, when jail staff asked Shanks if he was willing to
attend his trial, Shanks responded that he did not understand
why he needed to go to court. The judge instructed the jury
not to draw any inference from Shanks's absence or his deci-
sion not to testify. At Shanks's sentencing hearing, which
Shanks also did not attend, the judge sentenced him to multi-
ple life terms in prison.

## II. ANALYSIS

On appeal, Shanks makes three arguments. We address
each in turn.

### A. Criminal Rule 43

Shanks argues that the district court violated Rule 43 by
starting trial without his physical presence in a courtroom.
The government responds that Rule 43 was satisfied because

it does not require that a criminal trial start in a "courtroom." This court reviews legal questions such as these *de novo*. *See United States v. Bethea*, 888 F.3d 864, 865–66 (7th Cir. 2018).

Rule 43 sets forth requirements about a defendant's presence at trial and when he may waive that requirement. The defendant "must be present" at "every trial stage," Fed. R. Crim. P. 43(a)(2), but one "who was initially present at trial" may waive his right to be present "when the defendant is voluntarily absent after the trial has begun" or "when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom," Fed. R. Crim. P. 43(c)(1), (c)(1)(A), (c)(1)(C). The Rule does not specify whether a defendant must be *in a courtroom* to be "initially present" at trial. Notes to the Rules, however, observe that "intangible benefits" come from "requiring a defendant to appear before a federal judicial officer in a federal courtroom." Fed. R. Crim. P. 43 advisory committee's note to 2011 amendments.

The district court complied with Rule 43. After Shanks refused to come to court, the federal judge came to him, with counsel and a court reporter present. The judge thus created at the jail—the only place that he could reliably meet Shanks—the features of in-person presence in a federal courtroom. We have not previously addressed the question of *where* a defendant must be physically present to satisfy Rule 43's "initially present" requirement, but we have decided *when* he must be present. "[T]he phrase 'initially present at trial' in a jury trial must refer to the day that jury selection begins," not to the precise moment that the first prospective juror enters the courtroom. *United States v. Benabe*, 654 F.3d

753, 771 (7th Cir. 2011). Shanks's trial started (at the jail) earlier the same day that jury selection began in court, so timing was satisfied.

On the issue of where a trial may start, one circuit has held that a trial may start where a defendant is initially present, even if it is not a courtroom. In *United States v. Sterling*, 738 F.3d 228, 236 (11th Cir. 2013), Sterling, a combative defendant, refused to enter the courtroom on the day of jury selection, so the judge met him in an interview room. Citing *Benabe,* the Eleventh Circuit ruled that the trial started in the interview room (where Sterling had waived his right to attend trial any further) on the same day that jury selection began later. *Sterling*, 738 F.3d at 236–37. The court deemed it "absurd" to require a district court "to bring a combative defendant" into the courtroom where he might create predictable problems "with his own disruptive behavior." *Id*. at 236.

We agree with our sister circuit's reasoning and conclude that Shanks's physical presence before the judge at the jail satisfied Rule 43's "initially present" requirement. Although Sterling came to a courthouse, and Shanks did not, that difference is immaterial. Both Shanks and Sterling received an informed, face-to-face encounter with the trial judge, and they both risked disrupting proceedings by entering the courtroom.

Thus, the judge adequately complied with Rule 43.

B. *Constitutional Challenge*

Shanks next argues that in two respects the district court violated his Fifth and Sixth Amendment rights. First, he contends that those amendments prohibited the court from starting his trial at the jail. The Constitution says nothing about

whether trial must start in a courtroom. And, as already discussed, the district court complied with Rule 43, which "builds on," is "more demanding" than, and sets forth protections that are "more expansive" than those of the Constitution. *Benabe*, 654 F.3d at 771 (citing *United States v. Gibbs*, 182 F.3d 408, 436 (6th Cir. 1999)). Thus, because we conclude that the judge complied with Rule 43 when he started the trial at the jail, we need not conduct additional analysis to determine whether the relevant constitutional requirements were met. *See generally United States v. Vargas*, 915 F.3d 417, 420 (7th Cir. 2019) (federal courts should consider statutory and rule-based arguments ahead of constitutional ones); *see also Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) ("[C]onstitutional contentions must be set aside until their resolution is unavoidable.").

Shanks's second argument is fact-based. He contends that that the district court violated his constitutional rights to attend trial by unreasonably concluding, based on Shanks's conduct, that he impliedly waived his right to appear at trial. But, as Rule 43 reflects, the Constitution allows criminal defendants to waive—through their conduct—their right to remain present at trial. *See Benabe*, 654 F.3d at 768. And this court reviews deferentially the district court's finding that through his conduct, Shanks impliedly waived his right to attend his trial. *See id.* at 769. Specifically, we review for clear error the court's factual finding that waiver was knowing and voluntary; we review for abuse of discretion the court's conclusion that there was a controlling public interest to proceed with trial in the defendant's absence; and we review for harmlessness any error in those two decisions. *Id.*

Given the deferential standard of review, the court's con-
clusion that Shanks waived his right to attend trial must be
upheld. To begin, before trial, Shanks refused to accept the
order compelling his attendance. Then, after trial started at
the jail, Shanks repeatedly refused to tell the judge if he would
attend trial cooperatively, instead protesting that he did not
understand the charges. And when the judge explained that
Shanks did not need to understand the charges to say if he
would come to court (where he could argue his lack of under-
standing), he still refused to answer and tried to resurrect a
dead plea offer.

The judge also considered the public interest before pro-
ceeding in Shanks's absence. *Id.* ("The court must consider the
likelihood that the trial could take place with the defendant
present, the difficulty of rescheduling, the inconvenience to
jurors, and the burden on the government and others of hav-
ing to undertake two trials.") The judge knew that more than
50 witnesses were waiting to testify, so the burden of reched-
uling was high, and the chance that Shanks would cooperate
was very low. In light of this and Shanks's prior experience as
a federal criminal defendant, the judge properly found an im-
plied waiver of the right to attend trial. *Cf. id.* at 768–71 (de-
fendants' "campaign of obstreperous interruptions and frivo-
lous legal arguments," and refusal "to confirm that they
would behave respectfully in front of the jury" constituted
waiver).

### C. *Harmlessness*

Finally, Shanks argues that his absence from the court-
room during the trial affected the "fundamental nature" of
the proceeding and is not subject to harmless-error review.
The government counters that any error was not structural

and was harmless. Because no error occurred, we need go no further. But even if a technical Rule 43 violation occurred by starting the trial at jail rather than at court, we agree with the government that that error would be subject to harmless-error review. *See Benabe*, 654 F.3d at 773–74.

Shanks relies on *United States v. Thompson*, 599 F.3d 595 (7th Cir. 2010), to contend that his absence from the jury altered the fundamental nature of the trial, just as if a judge had been absent from trial. *Thompson* involved a hearing to revoke supervised release, and everyone was physically present in court, except for the judge who appeared from Key West, Florida, via video-conference, in violation of Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure. *Id.* at 599–601.

*Thompson* is unhelpful for two reasons. First, it establishes a harmless-error standard, and Shanks has not argued how he was harmed by his absence. For example, he does not argue that any trial testimony was incorrect, nor does he proffer his own counter testimony. Moreover, the judge instructed the jury not to draw any adverse inference from Shanks's absence, and he gave Shanks repeated chances to change his mind and come to court. Second, *Thompson* is distinguishable. Because the judge there used videoconferencing, the defendant had no in-person appearance before that judge. *See id.* at 597, 601. Here, the trial judge, counsel, and the court reporter all came to Shanks and appeared in his physical presence, so Shanks received a live, face-to-face encounter with the judge. Only then did the judge assess Shanks's demeanor and find that Shanks waived his right to attend the rest of the trial in court.

### III. CONCLUSION

Shanks's absence from most of his trial violated neither Rule 43 nor his constitutional rights. Shanks has also not shown prejudice from his absence. We therefore AFFIRM.